William G. JOHNS, t/a Washington Casket
Service, Appellant,

v.

Edward L. COTTOM, Appellee.

The McGUIRE FUNERAL SERVICE, IN-
CORPORATED, a corporation, Appellant,

v.

Edward L. COTTOM, Appellee.

Nos. 5744, 5747.

District of Columbia Court of Appeals.

Argued Sept. 13, 1971.

Decided Nov. 30, 1971.

James D. Newton, Silver Spring, Md., for appellant Johns.

John J. O'Neill, Jr., Washington, D. C., for appellant McGuire Funeral Service. James C. Gregg, Washington, D. C., also entered an appearance for McGuire Funeral Service.

Leonard Z. Bulman, Washington, D. C., with whom Milton A. Kallis, Washington, D. C., was on the brief, for appellee.

Before FICKLING, GALLAGHER and YEAGLEY, Associate Judges.

GALLAGHER, Associate Judge.

On June 26, 1963, appellee (Cottom) was a pallbearer at a funeral conducted by the McGuire Funeral Service (McGuire). The casket in which the deceased was placed had been purchased by McGuire from William G. Johns, a wholesaler (t/a Washington Casket Service). As the casket was carried toward the church with appellee occupying the right rearmost position, the handle on the side opposite him broke loose causing the casket to fall and injure him, striking his leg as it went down.

The case was initially brought under three theories: negligence, res ipsa loquitur

and breach of warranty. Directed verdicts had been granted against appellee (Cottom). On appeal, this court remanded the case for trial on the theory of breach of implied warranty,[1] setting forth guidelines for the determination of whether a breach had occurred. Cottom v. McGuire Funeral Service, Inc., D.C.App., 262 A.2d 807 (1970).

During the second trial, appellants objected to the introduction into evidence of an interrogatory answered by Mr. Johns, the wholesaler. The interrogatory was:

Q. Please state *what you allege was the cause* for the handle coming off of of the casket causing it to fall.

A. The screws were later found to be shorter than usual. Yet, the pallbearers must have twisted the handles in some unusual manner to cause them to break loose. (Emphasis supplied.)

Appellants asserted at the trial the fact was that Johns' statement was not based on personal knowledge but instead originated from a statement made to him by one of Johns' employees who had in turn received his information from an employee of the manufacturer.[2] It was contended that the answer to the interrogatory constituted hearsay and was inadmissible. McGuire made the further assertion that even should the answer be admissible against Johns, it could not be used against it. The court permitted the interrogatory to be read to the jury and did not limit its use to Johns.

At the close of plaintiff's case, appellants moved for a directed verdict contending there had not been sufficient proof of a defect in the casket; that there was no proof any defect caused the injury; and that plaintiff's case regarding the occurrence was conflicting. The motion was denied. During defendants' case, Johns testified concerning the previously related source of his information in the answer to the interrogatory.

1. This was the only theory seriously advanced on that previous appeal.

2. The manufacturer is not a party to this action.

After the close of all evidence, appellants moved to strike the answer to the interrogatory on the basis that their evidence had established the interrogatory lacked probative force and would only confuse the jury. They also renewed their motion for a directed verdict. These motions were also denied.

Among the jury instructions requested by appellants was the following:

Defendants' Requested Instruction No. 3. The jury is instructed that the liability of the defendants to the plaintiff does not arise in the absence of proof of a defect in the casket, and a mere conjecture that the casket was defective is not sufficient to establish liability. Nor can the plaintiff simply rely upon a showing that the accident happened to establish the existence of a defect in the casket. In other words, the jury must be satisfied, by a preponderance of the evidence that the casket was defective and that the defect caused the plaintiff's injuries, and such evidence must not be mere speculation or conjecture based upon the fact that the accident happened.

The trial court declined to give the requested instruction on the ground that the substance of it would be given in the court's charge. The jury returned a verdict for appellee in the amount of $2,500.

█ Essentially, appellants' contentions on appeal are threefold: (1) the interrogatory answer constituted inadmissible hearsay evidence, and even if admissible as an admission, the answer was immaterial and tended to confuse the jury;[3] (2) appellee failed to prove sufficiently the existence of a defect in the casket; and (3) the trial court failed to include the substance of requested instruction No. 3 in its charge, and such failure constituted reversible error.[4]

█ The first allegation of error, that Johns' answer to the interrogatory constituted inadmissible hearsay, is without merit. When a party makes a prior statement which is inconsistent with his position in the litigation, it may be introduced into evidence as an admission. Purer & Co. v. Aktiebolaget Addo, 410 F.2d 871, 877 (9th Cir.), cert. denied, 396 U.S. 834, 90 S.Ct. 90, 24 L.Ed.2d 84 (1969); Employers Mutual Casualty Co. v. Mosqueda, 317 F.2d 609, 612–613 (5th Cir. 1963); Cox v. Esso Shipping Co., 247 F.2d 629, 632 (5th Cir. 1957); Wade v. Lane, 189 F.Supp. 661, 664–665 (D.D.C.1960), aff'd, 110 U.S.App. D.C. 196, 290 F.2d 387 (1961). Johns' statement that the "screws were later found to be shorter than usual" in answer to the request that he state what he believed caused the accident could reasonably lead to the inference of a defect in the casket and thus be inconsistent with his position at trial that no defect existed.

█ Furthermore, the interrogatory is phrased "state what *you* (Johns) allege was the cause of the handle coming off" (emphasis supplied), and there is no indication on the face of the answer that it expressed a view other than Johns'. Moreover, it is not necessary for admissibility that the party's admission be based upon personal knowledge. Pekelis v. Transcontinental & Western Air, 187 F.2d 122, 129 (2d Cir.), cert. denied, 341 U.S. 951, 71 S.Ct. 1020, 95 L.Ed. 1374 (1951); State Farm Mutual Auto. Ins. Co. v. Porter, 186 F.2d 834, 842 (9th Cir. 1950); Salvitti v. Throppe, 343 Pa. 642, 644, 23 A.2d 445, 446 (1942). "The rule is that personal knowledge of the person making an admission is immaterial."

---

3. Appellant McGuire contends that even if the answer were admissible against Johns, the answer could not be properly used against it. We do not agree as Johns and McGuire were in privity and, concededly, were jointly liable in the event of a verdict in favor of the plaintiff.

4. Error is also claimed in the trial court's refusal to grant another requested instruction but it is clear that the instruction was essentially included in the court's charge.

*State Farm Mutual Auto. Ins. Co., supra,* 186 F.2d at 842. The basis for allowing an admission into evidence is the ability of the party to rebut the testimony thereby avoiding the danger prevented by the hearsay rule, that is, the inability to cross-examine an out-of-court assertion. 4 J. Wigmore, Evidence § 1048, at 3–4 (3d ed. 1940). Thus, factors having a bearing upon the reliability of an admission, such as lack of personal knowledge, may be explained by the declarant at trial. Smedra v. Stanek, 187 F.2d 892, 894 (10th Cir. 1951). In fact, the record in this case shows that Johns testified to the source of his answer. The weight which the jury placed upon his explanation is exclusively within the province of that body.[5]

■ Appellants' contention that there was insufficient evidence of a defect to support a jury finding for Cottom is also without merit. Although, of course, the jury must base its verdict on reason and the verdict may not rest on guess or speculation, the jury is entitled to draw reasonable inferences from all the evidence presented. McCrossin v. Hicks Chevrolet, Inc., D.C. App., 248 A.2d 917 (1969); Congressional Ins. Co. v. Ford Motor Co., D.C.App., 198 A.2d 918 (1964); Simpson v. Logan Motor Co., D.C.App., 192 A.2d 122 (1963).

It is not seriously disputed that the pallbearers had simply removed a *new* casket manufactured in North Carolina[6] from the hearse and were carrying it to the church when the handle pulled away[7] and the casket fell to the ground. This evidence was illuminated by the statement of appellant Johns in his interrogatory that the handle screws "were found to be shorter than usual." In these circumstances, it may hardly be said there was not evidence sufficient to enable the jury reasonably to conclude that all elements of a breach of warranty had been established. It was not error to deny the motions of appellants for a directed verdict.

■ Finally, we find no error in the court's charge to the jury. The court explicitly stated that Johns and McGuire were not "absolutely liable to Mr. Cottom because he sustained an injury, they are liable only if you find the four things as I have explained them." Three times the court stressed the elements of a breach of warranty including the necessity of proving that there was a defect in the product and that the injury to Cottom was a proximate result of that defect. The jury was told specifically that it must determine whether the casket handle was reasonably fit for the purpose intended. The court also stated that the person asserting the affirmative of an issue must prove his assertion by a preponderance of the evidence. Thus, the jury was adequately informed that the plaintiff bore the burden of proving the existence of a defect in the casket. All things considered, we find no substantial error, or lack, in the court's instructions.

Affirmed.

---

5. As to the contention that the answer to the interrogatory was immaterial, it is clear that an inference of a defect might be drawn from the answer and that it was material to the case. Furthermore, the argument that the answer would tend to confuse the jury is clearly without merit.

6. The casket was sold by the manufacturer to wholesaler Johns, who sold it to McGuire, who in turn sold it to the decedent's family.

7. It was decided in the first appeal that Cottom was a "user." Cottom v. McGuire Funeral Service, Inc., D.C.App., 262 A.2d 807, 809–810 (1970).