## ITT CONTINENTAL BAKING COMPANY, Appellant,

v.

## Julia O. ELLISON, and Safeway Food Stores, Inc., Appellees.

## SAFEWAY FOOD STORES, INC., Appellant,

v.

## ITT CONTINENTAL BAKING COMPANY, and Julia O. Ellison, Appellees.

### Nos. 9748, 9855.

District of Columbia Court of Appeals.

Argued Oct. 6, 1976.

Decided March 15, 1977.

---

Reid C. Tait, Washington, D. C., with whom James C. Gregg and Hugh Lynch, Jr., Washington, D. C., were on the brief, for ITT Continental Baking Co., appellant in No. 9748 and appellee in No. 9855.

Richard W. Boone, Washington, D. C., with whom Edward J. Lopata, Washington, D. C., was on the brief, for Safeway Food Stores, Inc., appellee in No. 9748 and appellant in No. 9855.

Alvin L. Newmyer, Jr., Washington, D. C., for appellee Ellison.

Before KELLY, FICKLING * and NE-BEKER, Associate Judges.

PER CURIAM:

In a jury trial, appellee Julia Ellison was awarded the sum of $12,000 compensatory damages plus costs jointly and severally against Safeway Food Stores, Inc., and ITT Continental Baking Company (hereafter, Safeway and ITT). Both Safeway and ITT are appealing that judgment.

The facts in the case are relatively simple. On July 12, 1973, Mrs. Ellison and her daughter were shopping in a Safeway store located in the District of Columbia. Mrs. Ellison separated from her daughter to look for some crackers. As she turned a corner and began to walk down one of the aisles in the store, her feet struck, and became entangled with, several metal trays that were lying near the end of the aisle, protruding into the walkway. Mrs. Ellison testified that she had not seen the trays prior to her fall. Her daughter testified that when she found her mother lying on the floor of the store, one of the trays was on top of her mother's feet.

Mr. Wheeler, the manager of the store, filled out an accident report wherein he stated that the accident occurred at 4:30 p. m.,[1] and that Mrs. Ellison had fallen over two trays left in the aisle by Mr. Proctor, the ITT deliveryman, "minutes before."

The trays in question were made of heavy metal wire and were variously described in the record before us as being between 2″ and 6½″ in height. Mr. Wheeler testified during the trial that Mr. Proctor had for-

gotten to remove the trays "many times," and that the deliveryman had been reprimanded previously by Safeway for this practice. Later in his testimony, however, Mr. Wheeler retrenched somewhat and said that trays had been left in the aisles only "once or twice" before.

After her fall, Mrs. Ellison was taken by ambulance to the Washington Hospital Center for emergency treatment. Since that time, she has been treated periodically for recurring pains in her back and legs. Although she had a previous history of heart trouble, Mrs. Ellison testified at trial that it was as a result of these injuries that she had been unable to continue working since the accident.

Safeway and ITT rely principally on three contentions before this court: (1) such evidence as was properly admitted was insufficient to support the finding of negligence and the $12,000 judgment against each of them; (2) the trial court erred in refusing to instruct the jury regarding Mrs. Ellison's alleged contributory negligence; and (3) the trial court also erred in allowing the jury to weigh what effect the fall might have had in aggravating Mrs. Ellison's preexisting physical conditions. We disagree with each of these contentions, and affirm.[2]

In regard to the first contention, Safeway avers that answers by ITT—in response to one of Mrs. Ellison's interrogatories regarding the time the deliveryman, Mr. Proctor, serviced the store on the day of the accident—should not have been admissible against Safeway to support Mrs. Elli-

---

* Associate Judge Fickling was a member of this division at the time the case was argued, but died before entry of this opinion.

1. At trial, Mr. Wheeler testified that he thought the accident had occurred between 3 and 4 p. m. We note, however, that records from the Washington Hospital Center indicate that Mrs. Ellison was admitted for emergency treatment at 4:50 p. m.

2. It is also contended that certain allegedly inflammatory remarks by Mrs. Ellison's counsel during his summation argument warranted reversal. Safeway further contends that it should have been granted indemnification against ITT. We have examined these contentions and, in light of the record, find them to be nonpersuasive.

son's argument that Safeway had constructive notice that the trays were in the aisle.[3]

██ It is well-settled that while a grocery does not insure the safety of its patrons, it must exercise reasonable care in keeping the premises safe for them. *Seganish v. District of Columbia Safeway Stores, Inc.,* 132 U.S.App.D.C. 117, 119–20, 406 F.2d 653, 655–56 (1968); *Fuller v. Giant Food, Inc.,* 114 U.S.App.D.C. 53, 310 F.2d 858 (1962). In the instant case, to prove that Safeway had breached this duty, it was incumbent upon Mrs. Ellison, as plaintiff below, to prove that the store had either actual or constructive notice that the trays had been left in the aisle.

It should be noted at the outset that, even without the interrogatories in question, the record before us contains ample evidence from which a jury could find such constructive notice. The accident report filled out by Mr. Wheeler, as manager of the store, placed the time of the accident at 4:30 p. m., although he was less certain of the time in his testimony at trial. At the trial, Mr. Wheeler stated that he believed the ITT deliveryman had serviced the store between 2:30 and 3 p. m. on the day of the accident. The deliveryman, Mr. Proctor, also testified at the trial and was subjected to cross-examination by Safeway's counsel. He stated that while he could not remember clearly his activities on the day in question, it was his impression that he serviced the store at 1 p. m., and that only once or twice had he ever serviced the store as late as 4 p. m. Mr. Wheeler admitted that every employee of the store had a duty to keep the

aisles clear, and the record shows that the aisles were swept by a Safeway employee just prior to 4:30 p. m. There is also evidence in the record that Safeway knew that on previous occasions the ITT delivery man had neglected to remove his trays after he had re-stocked the bakery goods shelves at the store. Weighing these facts alone, the jury would have been well within its province in concluding that the trays had been in the aisle long enough to put Safeway on constructive notice of their presence there. *Safeway Stores, Inc. v. Preston,* 106 U.S. App.D.C. 114, 269 F.2d 781 (1959). *See also Courtney v. Giant Food, Inc.,* D.C.App., 221 A.2d 92 (1966); *Sears, Roebuck & Co. v. Donovan,* D.C.Mun.App., 137 A.2d 716, 719 (1958); *Fuller v. Giant Food, Inc., supra.*

██ Safeway, nevertheless, avers that the introduction into evidence of the ITT interrogatory unduly prejudiced its case. We disagree. The interrogatory was answered by Mr. Fryburger, one of Mr. Proctor's supervisors, and stated that deliveries had been made at the Safeway store between 1 and 1:45 p. m. on the day in question.[4] In view of the fact that this evidence was only corroborative of Mr. Proctor's own testimony at trial, we cannot say that the trial court erred in allowing it to be admitted into evidence.[5]

Under Super.Ct.Civ.R. 33(b), the answers to interrogatories "may be used to the extent permitted by the rules of evidence."[6] Since the interrogatory was clearly admissible against ITT under the admission exception to the hearsay rule, our question becomes one of whether it was also admissible against ITT's co-defendant, Safeway.

---

**3.** ITT's contention that there was insufficient evidence to show that its deliveryman left the trays in the aisle fails in light of the record.

**4.** It is also contended that this answer should not have been admitted at all, since Mr. Fryburger did not make the delivery in question personally, and his answer therefore was hearsay. We disagree. It is well-established that an admission can be based on hearsay knowledge of the declarant. *Johns v. Cottom,* D.C.App., 284 A.2d 50, 52–53 (1971); *see* McCormick on Evidence, Ch. 26 § 263 at 632 (Cleary ed. 1972).

**5.** We note that at trial only a general objection was made to the admission of the answer, and

that counsel for Safeway did not request a limiting instruction on its use by the jury.

**6.** Counsel for appellee Ellison incorrectly contends in his brief that the admission of the answer was governed by the provisions of Super.Ct.Civ.R. 26 pertaining to depositions. Safeway's reply brief correctly points out that admissibility of interrogatories is not coextensive with admissibility of depositions.

■ It is a general rule that in a situation where both A and B are co-defendants:

[T]he statements of . . . B do not become receivable as admissions against A merely because B is also a party. In other words, *the admissions of one . . co-defendant are not receivable against another,* merely by virtue of his position as a co-party in the litigation. [4 Wigmore, Evidence § 1076 at 115 (3d ed. 1940) (emphasis in original).]

■ However, the admission of one co-party *can* be admitted against the other co-party where there is "a privity of obligation or of title" between the two parties. *Id.* at 115–16. *See, e. g., Johns v. Cottom,* D.C.App., 284 A.2d 50, 52 n. 3 (1971); *Marshall v. Marshall,* 55 App.D.C. 173, 176, 3 F.2d 344, 347 (1925); *Ben-Tom Supply Co. v. V. N. Green & Co.,* 338 F.Supp. 59, 64 (S.D.W.Va.1971); *McBriety v. Phillips,* 180 Md. 569, 26 A.2d 400 (1942); 29 Am.Jur.2d *Evidence* § 658 (1967). Moreover, it has been recognized that the joint tort-feasor relationship constitutes that type of privity of obligation. *See* 4 Wigmore, Evidence, *supra,* § 1079(2) at 134; *Hickey v. Anderson,* 210 Miss. 455, 49 So.2d 713, 717 (1951). In *Johns v. Cottom, supra,* Cottom was injured while serving as a pallbearer when one of the handles of the casket he was carrying broke. He sued both the retainer and the wholesaler of the casket. On appeal, the retailer contended that the answer to an interrogatory given by the wholesaler, to the effect that the screws securing the handle of the casket were shorter than usual, should not have been admitted into evidence. We disagreed, and in our holding on the issue we noted that:

Appellant McGuire [the retailer] contends that even if the answer were admissible against Johns [the wholesaler], the answer could not be properly used against it. We do not agree as Johns and McGuire were in privity and, concededly, *were jointly liable in the event of a verdict in favor of the plaintiff.* [*Id.* at 52 n. 3 (emphasis supplied).]

While the holding in that case was based on an implied warranty rationale, it is persuasive in the instant case since here Safeway and ITT were under a similar privity of obligation, as joint tort-feasors, and were also, therefore, jointly liable in the event of a verdict in favor of the plaintiff.

Our holding here does not constitute a reversal of the principle that an admission by one party is not generally to be used against a co-party, but we cannot say that the trial court abused its discretion in the instant case by allowing the answer to be admitted into evidence when a prima facie case was established by other evidence in the record. The answer to the interrogatory was, at best, corroborative information for the jury to weigh during its deliberations.

■ Since the record before us contains sufficient evidence from which the jury could conclude that both Safeway and ITT had breached their respective duties of care, there was no error in the jury's finding of liability on the part of both parties. *Seganish v. District of Columbia Safeway Stores, Inc., supra; Courtney v. Giant Food, Inc., supra; Fuller v. Giant Food, Inc., supra; Safeway Stores, Inc. v. Preston, supra; Sears, Roebuck & Co. v. Donovan, supra* at 719; *Lehman v. Great Atlantic & Pacific Tea Co.,* D.C.Mun.App., 136 A.2d 397 (1957).

■ The second contention raised by Safeway and ITT, that the trial court erred in refusing to charge the jury regarding contributory negligence, is equally nonpersuasive. The record indicates that the trays Mrs. Ellison tripped over were at the extreme end of the aisle she had just entered. In such a situation, it cannot be contended that Mrs. Ellison was contributorily negligent merely because she was not looking down as she entered the aisle. *See Deane v. United States,* 100 U.S.App.D.C. 328, 244 F.2d 776 (1957); *Newman v. United States,* 248 F.Supp. 669, 671 (D.C.D.C., 1965).

■ Finally, it is contended that the trial court erred in instructing the jury regarding aggravation of preexisting conditions. Both Safeway and ITT conclude that this

instruction allowed the jury to speculate on whether Mrs. Ellison's preexisting heart condition was aggravated by her fall, when no expert testimony was admitted on this point during the trial. We disagree with this conclusion. The record before us shows that the trial judge meticulously refused to allow any lay testimony regarding aggravation of appellee Ellison's heart condition. In this context, it is obvious that the general instruction that was given referred to the aggravation of her back and leg problems which she herself testified to during the trial. Lay testimony is competent to establish these types of injuries. *Jones v. Miller,* D.C.App., 290 A.2d 587, 590–91 (1972); *see* Prosser, Law of Torts, Ch. 5 § 32 at 164–65 (4th ed. 1971).

Finding no errors, the judgment entered by the trial court is accordingly.

*Affirmed.*