962 F.2d 1076
 295 U.S.App.D.C. 284
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
Shahram E. ZANGANEH, Appellant,
v.
BMW OF NORTH AMERICA, INC., Appellee.
 No. 91-7008.
 United States Court of Appeals, District of Columbia Circuit.
 June 5, 1992.
Rehearing En Banc Denied July 24, 1992.
 
 Before HARRY T. EDWARDS, BUCKLEY and SENTELLE,* Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This case came to be heard on the appeal of Shahram E. Zanganeh from the judgment of the District Court, and it was briefed and argued by counsel. The issues have been accorded full consideration by the Court and occasion no need for a published opinion. See D.C.Cir.Rule 14(c). For the reasons stated in the accompanying Memorandum, it is
 
 
 2
 ORDERED and ADJUDGED, by the Court, that in No. 91-7008, the judgment is reversed.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 15.
 
 MEMORANDUM
 
 4
 Shahram E. Zanganeh appeals from an order of the District Court granting summary judgment to the appellee, BMW of North America, Inc. ("BMWNA"), in this products liability action. The District Court entered judgment against Zanganeh because it concluded that he had not produced sufficient evidence that the alleged defect in his vehicle was "attributable" to BMWNA. Zanganeh v. BMW of North America, Inc., Civ. No. 89-0878 (D.D.C. June 29, 1990), reprinted in Appendix ("App.") 92. Although we share many of the concerns expressed by the trial court with respect to the strength and persuasiveness of Zanganeh's case, we conclude that under District of Columbia law, which governs this dispute, Zanganeh proffered sufficient evidence of defect attribution to survive the motion for summary judgment. Accordingly, we reverse the judgment of the District Court.
 
 I. BACKGROUND
 
 5
 The facts relevant to this appeal are set forth in the District Court's opinion and will not be repeated at length here. Briefly stated, on or about April 5, 1985, Zanganeh purchased a new BMW automobile from Heishman BMW, Inc. ("Heishman"); the car had been distributed to Heishman by BMWNA. On April 3, 1989, Zanganeh filed the instant diversity action, seeking damages under two theories of recovery: strict products liability, and breach of the implied warranty of merchantability. The gist of Zanganeh's claim is that an unspecified defect in the automobile caused gasoline and benzene fumes to leak into the passenger compartment; as a result of his exposure to these fumes, the complaint charges, Zanganeh suffered various personal injuries.
 
 
 6
 Zanganeh testified at his deposition that he noticed a "burning odor" in his car within "a few weeks" of purchasing it; this odor allegedly persisted throughout the three years that Zanganeh used the vehicle. See Zanganeh Dep. at 69-71, reprinted in App. 42. An affidavit submitted by Dr. Ramesh Chawla, a professor of chemical engineering who rode in the automobile on two occasions in 1987, attributes the burning odor to the presence of hydrocarbon fumes in the passenger compartment. See Chawla Aff. pp 2-3, reprinted in App. 88. However, Zanganeh's complaint regarding fume leakage was not "documented" until July 14, 1986, one year and three months after the date of purchase, at which time it was noted in a service order prepared by Heishman. See Zanganeh, slip op. at 2.
 
 
 7
 Zanganeh also proffered evidence from two expert witnesses on the issue of vehicle defect. The first witness, Dr. John Brown, obtained air samples from the interior of the vehicle in March 1988; his analysis indicated that high levels of benzene and gasoline fumes were present. A second expert, Peter Lissiuk, examined the car in 1990, five years after its purchase (and two years after Zanganeh stopped using it). Lissiuk found elevated levels of hydrocarbon fumes in some areas of the vehicle, but he could not pinpoint any specific cause of the fume leakage. On cross-examination during his deposition, Lissiuk opined that there were at least three possible causes of the fumes: excessive pressure in the vehicle's charcoal canister, which could result from using certain types of gasoline; improperly seated O-rings; and leaks in certain fuel hoses, caused either by age or improper manufacture. See Lissiuk Dep. at 47-49, 81-86, reprinted in App. 54. Zanganeh offered no other direct evidence of any mechanical defect in the vehicle.
 
 
 8
 On March 26, 1990, BMWNA moved for summary judgment, arguing that there was insufficient evidence as a matter of law to support Zanganeh's claim that his vehicle was defectively designed or manufactured.[1] The District Court granted BMWNA's motion for summary judgment in an order filed on June 29, 1990.
 
 
 9
 The trial court first held that under the "general defect" theory recognized in the District of Columbia, a plaintiff may establish a products liability claim by producing evidence--direct or circumstantial--which tends to negate causes for his injury other than a product defect and show that the alleged defect is "attributable" to the defendant, i.e., that the defect was present when the product left the defendant's control. See Zanganeh, slip op. at 5. The District Court found that Zanganeh had produced sufficient evidence of the existence of a defect in the automobile, see id. at 6-7, but that he had failed to produce enough evidence to attribute the defect to BMWNA, id. at 7-10. The trial court noted that an inference that a car was defective at the time of purchase can be drawn from the fact that the vehicle was still new when the defect surfaced; however, the trial court concluded that Zanganeh could not rely on this "newness" inference since there was no "documentary" evidence of the fume problem until more than a year after the car was sold. Id. at 7. Because Zanganeh's expert had identified several possible causes of the fumes, the trial court reasoned, it would be "mere speculation" for the jury to find that the defect was attributable to BMWNA. Id. at 9. Accordingly, the District Court entered judgment for BMWNA on Zanganeh's claims.
 
 
 10
 Zanganeh subsequently moved for reconsideration of the District Court's judgment. In an affidavit attached to the motion, Zanganeh pointed out that he had consistently claimed that the burning odor in the car had been present from, or near, the time of purchase; as such, he contended, the trial court should not have held against him on the "attribution" issue because the newness of the car constituted evidence that the defect originated with BMWNA. The affidavit also asserted that Zanganeh had reported the burning odor to Heishman on June 3, 1985, during the first service visit after his purchase of the car, at which time it had been driven only 175 miles. See Supplemental Aff. pp 2-5, reprinted in App. 114.
 
 
 11
 The District Court denied Zanganeh's motion for reconsideration. Zanganeh v. BMW of North America, Inc., Civ. No. 89-0878 (D.D.C. Dec. 20, 1990). Noting that the service report corresponding to Zanganeh's June 3 service visit to Heishman made no mention of the alleged burning smell, the court concluded that, absent documentary evidence of any complaint, Zanganeh could not rely on the "newness" of the vehicle as evidence of attribution. Id., slip op. at 2. The court therefore adhered to its former view that a jury finding that the defect was attributable to BMWNA "would be mere speculation." Id. at 1.
 
 II. DISCUSSION
 
 12
 Summary judgment may be granted to a party only if there are no genuine issues of material fact--that is, only if, viewing the evidence most favorably to the non-moving party, a reasonable jury would be compelled to return a verdict for the movant. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49, 255 (1986); Johnson v. Washington Metro. Area Transit Auth., 883 F.2d 125, 128 (D.C.Cir.1989), cert. denied, 494 U.S. 1027 (1990). In this case, Zanganeh argues that the District Court erred in granting judgment to BMWNA because, under District of Columbia law, he produced sufficient evidence on the attribution issue to survive the motion for summary judgment. We agree.
 
 
 13
 As the District Court recognized, Stewart v. Ford Motor Co., 553 F.2d 130 (D.C.Cir.1977), and its progeny govern the disposition of this case. In Stewart, this court, relying upon District of Columbia precedent, held that a plaintiff in a products liability action may proceed on a general defect theory--that is, the plaintiff need not pinpoint the precise component of the vehicle that was defective, and the evidence relied upon may be purely circumstantial. Id. at 137-38. In order to be permitted to go to the jury under the general defect theory, the plaintiff must
 
 
 14
 present evidence on two closely related points. First, plaintiff must present evidence which would tend to negate causes for an accident other than a defect in the product. Second, plaintiff must present proof which would suggest that whatever defect might have existed was one introduced into the product by the defendant.
 
 
 15
 Id. at 137 (citations and footnote omitted). With respect to the second part of the required proof, the Stewart court held that the "newness" of a vehicle is itself evidence that the alleged defect is attributable to the manufacturer or distributor, at least where there is no indication that the vehicle was altered subsequent to purchase. See id. at 139. The principles announced in Stewart have been reaffirmed by this court in subsequent cases. See Siegel v. Mazda Motor Corp., 835 F.2d 1475, 1478-79 (D.C.Cir.1987); Hall v. General Motors Corp., 647 F.2d 175, 178-79 (D.C.Cir.1980).
 
 
 16
 At the outset, we are met with BMWNA's contention that Stewart and its progeny are inconsistent with District of Columbia law. We disagree. Although it appears that the D.C. Court of Appeals has not explicitly embraced Stewart, the court has applied the substance of the Stewart approach in its cases. See, e.g., Guardian Ins. Co. v. Anacostia Chrysler-Plymouth, Inc., 320 A.2d 315, 316-17 (D.C.1974) (endorsing general defect theory); Johns v. Cottom, 284 A.2d 50, 53 (D.C.1971) (emphasizing "newness" of product in upholding jury verdict based largely on circumstantial evidence). Indeed, the Stewart circumstantial evidence standard has been incorporated into the District of Columbia's standard civil jury instructions. See BAR ASSOCIATION OF THE DISTRICT OF COLUMBIA, STANDARDIZED CIVIL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA 134-35 (Supp.1985). Thus, contrary to BMWNA's contention, there is no inconsistency between Stewart and District of Columbia law.
 
 
 17
 Having determined that Stewart accurately reflects local law, we turn to the remaining issue in this case: whether Zanganeh proffered enough evidence to survive a motion for summary judgment on the second prong of the Stewart test--i.e., "proof which would suggest that whatever defect might have existed was one introduced into the product by the defendant." Stewart, 553 F.2d at 137. Zanganeh argues that his testimony that the burning odor began shortly after his purchase of the car permits the inference that the defect was attributable to BMWNA. We agree.
 
 
 18
 As discussed above, Stewart and its progeny recognized that the "newness" of a product at the time of an accident or malfunction is itself evidence that the defect was introduced into the product by the manufacturer or distributor. See id. at 139; see also Hall, 647 F.2d at 178. This "newness" inference is consistent with everyday experience, which suggests that where a consumer has complained about a problem with a product from, or near, the time of purchase, it is reasonable to infer that the defect originated with the seller; the inference is likewise in accord with the view of other courts. See, e.g., Chestnut v. Ford Motor Co., 445 F.2d 967, 971 (4th Cir.1971); Stewart v. Budget Rent-A-Car Corp., 470 P.2d 240, 245 (Haw.1970).
 
 
 19
 Here, there is record evidence that Zanganeh noticed and complained about the burning odor in his automobile within a few weeks after the date of purchase. See Supplemental Aff. p 2 (App. 114); Zanganeh Dep. at 69 (App. 47). If a jury were to credit this testimony--as, on a motion for summary judgment, we must assume that it would--then the testimony would permit the inference that the defect in the vehicle was attributable to BMWNA. See Stewart, 553 F.2d at 137. Accordingly, we conclude that summary judgment should not have been granted to BMWNA, especially in view of the minimal quantum of proof necessary to survive such a motion under District of Columbia law. See Hall, 647 F.2d at 178; Rich v. District of Columbia, 410 A.2d 528, 532-33 (D.C.1979).
 
 
 20
 BMWNA attempts to defend the grant of judgment in its favor on three grounds, none of which we find to be persuasive. First, BMWNA argues that there is no evidence demonstrating a link between the burning odor noticed by Zanganeh and the presence of hydrocarbon fumes in the car. This is simply incorrect--the affidavit of Dr. Ramesh Chawla draws precisely that connection. See Chawla Aff. pp 2-3 (App. 88).
 
 
 21
 BMWNA next argues that Zanganeh's claim of "attribution" is undermined by the speculations of his own expert, Peter Lissiuk, regarding the possible causes of the leakage of fumes into the passenger compartment of the vehicle. We disagree. The possibilities cited by Lissiuk are potential after-the-fact occurrences; as such, they are essentially irrelevant under the "newness" theory relied upon by Zanganeh in this case. Zanganeh's deposition testimony, if believed, tends to eliminate causes for the fumes--including those identified by his expert--other than a manufacturing or design defect.
 
 
 22
 Finally, BMWNA contends that the alleged defect in the vehicle cannot be attributed to it because there is no "documentary" evidence of any complaint about fumes by Zanganeh until more than a year after the purchase of the car. To be sure, the lack of such evidence could tend to undermine the credibility of Zanganeh's testimony; nonetheless, his testimony, though uncorroborated, still provides evidence that the fumes were present when the car was new. This in turn raises a genuine issue of fact as to BMWNA's responsibility for the defect. See Anderson, 477 U.S. at 255 ("Credibility determinations ... are jury functions, not those of a judge....").
 
 
 23
 In sum, we hold that Zanganeh produced sufficient evidence of defect "attribution" to survive BMWNA's motion for summary judgment. We share many of the District Court's doubts regarding the ultimate persuasiveness of Zanganeh's evidence and his likelihood of prevailing at trial. Nonetheless, under Stewart and its progeny, Zanganeh has made a sufficient showing to go to the jury on his strict liability claim. And because Zanganeh's claim for breach of the implied warranty of merchantability turns on the same proof as his strict liability claim, we reverse the District Court's grant of judgment on that cause of action as well. See Bowler v. Stewart-Warner Corp., 563 A.2d 344, 346-47 (D.C.1989).
 
 III. CONCLUSION
 
 24
 For the reasons stated above, the judgment of the District Court is reversed.
 
 
 25
 SO ORDERED.
 
 SENTELLE, Circuit Judge, dissenting:
 
 26
 I do not see why the district judge's opinion that the evidence of the plaintiff would support no more than speculation is not entirely correct. If the law of the District of Columbia plainly required submitting speculation to a jury, I could vote to reverse. I do not see that it does. In the two cases cited by the majority as endorsing the general defect theory, I find nothing that compels the decision in this case. In Guardian Ins. Co. v. Anacostia Chrysler-Plymouth, Inc., 320 A.2d 315 (D.C.1974), the courts of the District upheld the viability of a claim based on a sudden fire in the electrical system of a recently purchased Chrysler Newport, where an expert witness testified that "it was his opinion that the fire resulted from a short in the electrical wiring under the dashboard." 320 A.2d at 317. In Johns v. McGuire, 284 A.2d at 50 (D.C.1971), a pallbearer sued for injuries sustained when the casket he was assisting in carrying fell and struck him. The evidence was that the handle had pulled off of the casket and had unusually short screws in it. As one might expect, the casket was brand new and not previously used.
 
 
 27
 Neither of these cases to me parallels a case in which the evidence taken in the light most favorable to the plaintiff is that the plaintiff has an illness which might have been caused by inhaling the fumes of burning hydrocarbons. The same plaintiff owned an automobile which might have had fumes of burning hydrocarbons in it, at various unspecified times. If the vehicle did in fact have those fumes in it, they might have been the result of a defect. If they were the result of a defect, the defect might have been there when the vehicle was sold. By the way, the injury showed up after the plaintiff had owned the car for a year and a half or so and the defendant would not be liable unless the defect were there at the time of sale. I cannot understand why we are sending this case back.
 
 
 
 *
 Judge Sentelle dissents for the reasons set forth in his attached statement
 
 
 [1]
 Zanganeh's complaint named both BMWNA and Heishman as defendants. Shortly after BMWNA filed its motion for summary judgment, Zanganeh reached a settlement with Heishman and it was dismissed as a party to this suit