796 F.2d 1346
 1 UCC Rep.Serv.2d 1115, Prod.Liab.Rep.(CCH)P 11,202
Licia McQUISTON and Frankie McQuiston, her husband,
Plaintiffs-Appellants,
v.
K-MART CORPORATION, a Michigan Corporation, and Indiana
Glass Company, an Indiana Corporation, Defendants-Appellees.
 No. 85-3486.
 United States Court of Appeals,
Eleventh Circuit.
 Aug. 14, 1986.
As Amended Aug. 28, 1986.
 
 Jack B. Nichols, Orlando, Fla., for plaintiffs-appellants.
 H. David Luff, Orlando, Fla., for defendants-appellees.
 Appeal from the United States District Court for the Middle District of Florida.
 Before RONEY and FAY, Circuit Judges, and SIMPSON, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 While shopping in a Winter Park, Florida, K-Mart store, Licia McQuiston received severe and permanent injuries to her wrist when she lifted the lid of a cookie jar on display on a store shelf and the lid came apart. Ms. McQuiston and her husband sued K-Mart and the cookie jar's manufacturer, Indiana Glass Company, alleging theories of strict liability and breach of implied warranty. Before trial, the district court granted summary judgment on the implied warranty theory because no "sale" of the product had occurred. The case proceeded to trial on the strict liability theory, and the jury returned a verdict in favor of both K-Mart and Indiana Glass. We affirm.
 
 K-MART
 
 2
 As between the McQuistons and the retailer, K-Mart, the district court correctly concluded that there can be no implied warranty absent a "sale" of the product. Both the Florida Uniform Commercial Code (UCC) and Florida common law require a sale of a product before there can be an implied warranty. An implied warranty is contractural in nature and cannot exist without a contract. Sperry Rand Corp. v. Industrial Supply Corp., 337 F.2d 363, 368 (5th Cir.1964) (Florida law); Carter v. Hector Supply Co., 128 So.2d 390, 391 (Fla.1961); 41 Fla.Jur.2d Products Liability Secs. 6, 21 (1983).
 
 
 3
 The Florida UCC implied warranty statute, Fla.Stat.Ann. Sec. 672.314, provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Section 672.106 defines a "contract for sale" as "includ[ing] both a present sale of goods and a contract to sell goods at a future time" and a "sale" as "consist[ing] in the passing of title from the seller to the buyer for a price." See also Dunham-Bush, Inc. v. Thermo-Air Service, Inc., 351 So.2d 351, 353 (Fla. 4th DCA 1977) (one of the elements to be alleged in Florida UCC implied warranty action is facts in respect to the sale of the goods).
 
 
 4
 Both pre- and post-UCC case law holds that a sale is required. E.g., Favors v. Firestone Tire & Rubber Co., 309 So.2d 69, 72 (Fla. 4th DCA 1975) (no implied warranty action against automobile dealer when dealer delivered truck to tire store to have the tires changed and a wheel and rim exploded, injuring tire store employees; bailment for mutual benefit not similar to sale); Marini v. Town & Country Plaza Merchants Ass'n, 314 So.2d 180, 182 (Fla. 1st DCA 1975) (city has no implied warranty liability to employee or independent contractor injured while operating city's fireworks display; implied warranty arises from sale of goods or property); Wentzel v. Berliner, 204 So.2d 905, 906 (Fla. 2d DCA 1967) (professional food caterer who voluntarily participated in church fund-raising dinner is not liable for breach of implied warranty of fitness because there is no contract between the caterer and the injured diner), cert. denied, 212 So.2d 871 (Fla.1968).
 
 
 5
 That there was no sale or contractual relationship in this case is undisputed. The McQuistons argue, though, that Florida has abandoned the "sale" requirement at least for warranties extending from retailers to potential purchasers. The cases cited by the McQuistons do not support this argument.
 
 
 6
 The cited cases fall into two classes. As to the first group, the cases do not abandon the sale requirement, but merely broaden the circumstances in which a "sale" occurs. E.g., Sheppard v. Revlon, Inc., 267 So.2d 662, 664 (Fla. 3d DCA 1972) ("sale" arose when consumer received free wrinkle cream by purchasing other cosmetic products). The most common factual pattern, and the one closest to this case, involves a customer picking up an item off a shelf in a self-service store and manifesting an intent to purchase the item, such as by putting food in a grocery basket to carry it to the check-out counter. See, e.g., Schuessler v. Coca-Cola Bottling Co., 279 So.2d 901 (Fla. 4th DCA 1973); Reese v. Florida Coca-Cola Bottling Co., 256 So.2d 392 (Fla. 1st DCA 1972); Renninger v. Foremost Dairies, Inc., 171 So.2d 602 (Fla. 3d DCA), cert. denied, 177 So.2d 480 (Fla.1965); see also Annot., 78 A.L.R. 3d 696 (1977). Although the Florida courts have not elaborated on why a "sale" occurs in these circumstances, other courts have explained that placing goods on a shelf in a self-service store for customer inspection and selection constitutes an offer to sell such goods at the stated price, and the customer's act of taking physical possession of the goods with intent to pay for them constitutes a reasonable mode of acceptance, so as to form a "contract for sale." Fender v. Colonial Stores, Inc., 138 Ga.App. 31, 225 S.E.2d 691, 693-94 (1976); see also Annot., supra. In the present case, the uncontradicted evidence in Ms. McQuiston's pretrial deposition and trial testimony was that she was shopping for a cookie jar and had lifted the lid of this jar to see if the price tag was located inside. She had not formed any intent to purchase.
 
 
 7
 As to the second group, the cases deal with whether someone who lacks privity of contract with the merchant, such as the purchaser's relatives or employees, may nevertheless assert a breach of warranty claim. E.g., Food Fair Stores v. Macurda, 93 So.2d 860 (Fla.1957); Sencer v. Carl's Markets, Inc., 45 So.2d 671 (Fla.1950). In such cases, it is clear that a sale has occurred, and the issue concerns to whom the resulting warranty extended. See Carter v. Hector Supply Co., 128 So.2d at 392 (Macurda and Sencer involved foodstuffs, an exception to the privity requirement).
 
 
 8
 Although there are good arguments for extending warranty liability to merchants who display or demonstrate their products to potential purchasers, the McQuistons have cited no case law in Florida or elsewhere finding a warranty in a closely analogous situation.
 
 
 9
 In holding that the McQuistons have no implied warranty claim, this Court does not consider any other claims or recourse they may have had against K-Mart under Florida law.
 
 Indiana Glass Company
 
 10
 It is not as simple to dispose of the implied warranty claim against the manufacturer, Indiana Glass, on the ground that Ms. McQuiston had not purchased the product. A number of common law cases have allowed an implied warranty claim against a product manufacturer who had sold the product to a retailer, even though the injured party was not in contractual privity with the manufacturer and had not purchased the product. For example, in Matthews v. Lawnlite Co., 88 So.2d 299 (Fla.1956), the court found an implied warranty claim against the manufacturer of an aluminum rocking chair in favor of a store customer who was injured when he sat in the chair while it was on display in the store.
 
 
 11
 Since the case was tried to the jury on the strict liability theory, however, no harm came from excluding the implied warranty theory. There is no practical difference in the trial of the case. When the strict liability theory of section 402A of the Restatement (Second) of Torts was adopted in West v. Caterpillar Tractor Co., 336 So.2d 80 (Fla.1976), the court recognized that while implied warranty and strict liability theoretically are different, one being an action in contract, the other in tort, these theoretical inconsistencies are not of practical significance. The court stated that adopting section 402A in light of cases such as Matthews created "no great new departure from present law and, in most instances, accomplishes a change of nomenclature." 336 So.2d at 86. See Cassisi v. Maytag Co., 396 So.2d 1140, 1143 (Fla. 1st DCA 1981) (plaintiff in either implied warranty or strict liability action is required to prove that defect in product existed at the time the manufacturer parted possession with the product).
 
 
 12
 In cases of this kind, the manufacturer is in a different position from a retailer. Both manufacturer and retailer are liable under Florida strict liability law for defects occurring during manufacture, before the product leaves the manufacturer's possession. Under implied warranty law, a retailer may be held liable also for post-manufacturing defects occurring while the product is in the retailer's possession. For the manufacturer, however, implied warranty liability extends only to defects that occur before he parts possession with the product, the same period covered by the strict liability theory. Therefore, the two theories are virtually co-extensive as to the manufacturer. In a case similar to the one currently before the Court, the Florida court held that there was no reversible error when the trial court instructed the jury on breach of implied warranty but failed to instruct on strict liability. In Sansing v. Firestone Tire & Rubber Co., 354 So.2d 895 (Fla. 4th DCA), cert. denied, 360 So.2d 1250 (Fla.1978), the court found that the theories of implied warranty and strict liability had become "so intertwined" that any distinctions in the applicable Florida standard jury instructions were of "no practical significance." Id. at 897.
 
 
 13
 Hartman v. Opelika Machine & Welding Co., 414 So.2d 1105 (Fla. 1st DCA 1982), pet. for review denied, 426 So.2d 27 (Fla.1983), also supports the conclusion that McQuiston suffered no prejudice by failure to instruct on implied warranty. Noting that "[t]here can be little doubt that the scope of strict liability is far more extensive than a claim based on implied warranty," id. at 1109, the court held that the plaintiff was prejudiced when the trial court instructed on implied warranty but not on strict liability. The natural corollary of Sansing and Hartman is that the failure to instruct on implied warranty is not prejudicial when the standard strict liability instruction has been given.
 
 
 14
 In the present case, the district court cited Sansing in its order granting summary judgment on the McQuistons' implied warranty claim. The court instructed the jury that the product must have been "defective when it left the possession of Indiana Glass Company." This instruction would have been the same for implied warranty. Regardless of whether the McQuistons could have asserted an implied warranty theory of recovery against the product manufacturer under Florida law, they were not prejudiced by the district court's order or jury instructions.
 
 Conclusion
 
 15
 The Court has examined each of the other alleged errors. The trial court's refusal to give a design defect instruction was proper given the lack of evidence regarding a design defect. The McQuistons have waived most of their other arguments by failing to raise specific objections at trial, and the cumulative effect of the alleged errors is not such as to amount to fundamental error constituting a manifest miscarriage of justice.
 
 
 16
 AFFIRMED.