**Anne T. BOWLER, Appellant,**

v.

**STEWART–WARNER CORPORATION, Appellee.**

No. 86–1134.

District of Columbia Court of Appeals.

Argued June 9, 1988.
Decided Aug. 18, 1989.

Karl N. Marshall, with whom William C. Burgy, Washington, D.C., was on the brief, for appellant.

Laurence T. Scott, with whom Leo A. Roth, Jr., Washington, D.C., was on the brief, for appellee.

Before ROGERS, Chief Judge,[1] and MACK and FERREN, Associate Judges.

MACK, Associate Judge:

This is an appeal from a judgment for appellee rendered by the trial court notwithstanding the verdict (n.o.v.) in a products liability case. Appellant contends that she presented sufficient evidence to recover for an injury under either a theory of strict liability in tort or one of implied warranty of merchantability, and that the trial court, faced with a special verdict by the jury granting recovery on implied warranty, and denying recovery on strict liability, erred in granting the judgment n.o.v. for appellee. Appellee replies that, while the trial court erred in submitting the two theories to the jury ("since the actions for breach of implied warranty of merchantability and strict liability in tort are but two names for the same cause of action"), the court properly corrected its error by rendering judgment n.o.v. We conclude that the trial court erred in instructing the jury and that the court did not correct, but rather compounded, its error by substituting its own judgment for that of the jury in its grant of appellee's motion for judgment

1. Judge Rogers was an Associate Judge of this court at the time of argument. Her status changed to Chief Judge on November 1, 1988.

n.o.v. We therefore reverse and remand for a new trial.

## I.

Appellant, an attorney with the United States Department of Labor, brought this products liability action alleging that she sustained permanent back injuries as a result of defective ball casters which were designed, manufactured, and installed by appellee. Specifically, she contends that the ball casters on her office chair [2] did not permit the chair to roll freely across the floor, and as a result of this defective condition, she injured her back when she attempted, while seated, to move the chair up to her desk. Appellant advanced her claim on the theories of strict liability, negligence, and breach of the implied warranty with respect to fitness for a particular purpose. See *infra* note 4 and accompanying text. After a jury trial, appellee moved for a directed verdict. This motion was granted in part and appellant's claims of strict liability and breach of implied warranty of merchantability were taken under advisement by the court and presented to the jury. By special verdict, the jury awarded appellant $150,000 on the implied warranty of merchantability claim and denied her strict liability claim.

Appellee moved for judgment notwithstanding the verdict or alternatively for a new trial. The trial court chose to grant the motion for judgment n.o.v. It held that a new trial was not warranted. It instead vacated the verdict as to appellant's implied warranty of merchantability claim, concluding that since appellant had failed to present evidence of "privity," the instruction which he had given with respect to the "contract-oriented" breach of warranty claim was superfluous and unwarranted. The court reasoned that since the theories of "tortious" breach of warranty and strict liability "are co-extensive and effectively identical," its instruction on strict liability, and the jury's verdict on the claim based on the theory of strict liability, disposed of the

necessity for, as well as the claim based on, the tortious breach of implied warranty. While at first blush the trial court's approach appears to be a judicially economical and innovative method of disposing of a superfluous instruction, as well as a superfluous verdict, it basically highlights the fact of inconsistent verdicts. It added complexity to what is already a confusing record of proceedings, and confusing assertions of claims, confusion which only a new beginning can remedy.

## II.

One statement should be made at the outset about which there must be no confusion—the District of Columbia is a jurisdiction affording recovery for tortious injury to the ultimate consumer—whether sought under a theory of strict liability or implied warranty. Historically, there have been contractual antecedents in warranty liability; however, " '[i]t is undisputed that the original tort form of action [in warranty] ... still survives to the present day, and may be everywhere maintained.' " *Payne v. Soft Sheen Products, Inc.*, 486 A.2d 712, 719 (D.C.1985) (citing Prosser, *The Assault upon the Citadel (Strict Liability to the Consumer)*, 69 YALE L.J. 1099, 1126 (1960)). The adoption of strict liability and

> the attendant removal of both privity and negligence seemed but a cumulation of tendencies within sales and tort law clamoring for open recognition and synthesis. Warranty liability, no longer confined to sales transactions [and the requirement of "privity"], made its contribution to the process of merger by reminding courts that sellers of defective goods are, on principle, *strictly accountable* for injuries to remote parties anyhow, if only by indirection.

Kessler, *Products Liability*, 76 YALE L.J. 887, 898–99 (1967) (emphasis added); *see* Prosser, *The Fall of the Citadel (Strict Liability to the Consumer)*, 50 MINN.L. REV. 791, 800–805 (1965–66); 2 FRUMER & FRIEDMAN PRODUCTS LIABILITY § 3.01[1] at

---

**2.** The chair was new when placed in her office and had been in use for more than a year at the time of the injury.

3–5 (1988) ("[l]iability in warranty arises where damage is caused by the failure of a product to measure up to express or implied representations on the part of the manufacturer.... The focus, therefore, is on the condition of the product. Accordingly, an injured person is not required to prove negligence in a warranty-products liability case."). Thus, the "warranty" we refer to is quite different from a "warranty" in connection with the sale of goods. The focus, as with strict liability, is on the condition of the product itself. Indeed, the warranty action was stripped of its contractual baggage and the original tort action for warranty was re-established free of contract associations. *See Payne, supra*, 486 A.2d at 719. Some twenty-seven years ago, this court noted that "concepts of negligence and fault, as defined by negligence standards, have no place in warranty recovery cases." *Picker X–Ray Corp. v. General Motors Corp.*, 185 A.2d 919, 922 (D.C. 1962). Moreover, warranty liability was a form of strict liability: a plaintiff could recover if he established, first, that the product was defective, *i.e.*, not reasonably fit for its intended purpose *or not of merchantable quality;* and second, that as a result of the defect, the product caused injury. *Payne, supra*, 486 A.2d at 720 (quoting *Picker X–Ray Corp., supra*, 185 A.2d at 922) (emphasis added); *see Fisher v. Sibley Memorial Hospital*, 403 A.2d 1130, 1133 (D.C.1979) (breach of implied warranty and strict liability in tort are expressions of single basic public policy as to liability for defective products); *Berman v. Watergate West, Inc.*, 391 A.2d 1351, 1355 (D.C.1978); *Cottom v. McGuire Funeral Service, Inc.*, 262 A.2d 807, 808 (D.C.1970) ("[t]he differences between strict liability in tort and implied warranty, if any, are conceptual").[3] *See, e.g.*, Prosser, *The Fall of the Citadel, supra*, at 802 ("all of the

trouble lay with the one word 'warranty,' which had been from the outset only a rather transparent device to accomplish the desired result of strict liability. No one disputed that the 'warranty' was a matter of strict liability. No one denied that where there was no privity, liability to the consumer could not sound in contract and must be a matter of tort."). *See Picker X–Ray, supra*, 185 A.2d at 923 ("the buying public in the District of Columbia is better protected by eliminating the requirement for contractual privity in suits brought by the user against the manufacturer for breach of implied warranty resulting from a defectively manufactured product"). The protection is there without the constrictions of the Uniform Commercial Code. *See* D.C.Code § 28:2–101 *et seq.* (1981). Thus, in *Payne, supra*, we noted that Comment m to 402A of the RESTATEMENT (SECOND) OF TORTS made a clear distinction between strict liability (*i.e.*, implied warranty) and sales warranty:

> There is nothing in this Section which would prevent any court from treating the rule stated as a matter of "warranty" to the user or consumer. But if this is done, it should be recognized and understood that the "warranty" is a very different kind of warranty from those usually found in the sale of goods, *and that it is not subject to the various contract rules which have grown up to surround such sales.*

*Payne, supra*, 486 A.2d at 720 (emphasis added).

### III.

The instant complaint was filed seeking recovery under counts presenting theories of strict liability, implied warranty, and negligence. No reference was made to the Uniform Commercial Code (*see D.C.Code* § 28:2–101 *et seq.*), although the implied

---

**3.** Given our conclusion that the trial court erred in giving instructions on two liability theories that are identical under our caselaw, we do not reach the question of the scope and applicability of § 28:2–318 (identical to U.C.C. § 2–318) which requires the contractual element of privity. This section is designed specifically to protect buyers (or third party beneficiaries who are "nonprivity parties" under the section and thus

shielded from the defense of lack of privity if they are "natural person[s] who [are] in the family or household of the [seller's] buyer). *See* 3 ANDERSON UNIFORM COMMERCIAL CODE § 2–318:5 at 405 (3rd ed.1983). At the new trial, counsel for both parties should determine which theories they will advance and how they will advance them, whether in contract or tort or both.

warranty count made reference to fitness for a particular purpose. *Cf.* D.C.Code § 28:2–315. There is some confusion in the record as to what counts were disposed of by the granting of a directed verdict for appellee at the close of the evidence. The court's Memorandum Opinion identified the claims as (1) negligence and (2) breach of warranty of fitness for a particular purpose.[4] In any event, for our purposes we need only to look to the claims taken under advisement and submitted in instructions to the jury, reading as follows:

The first theory under which the plaintiff seeks to recover is the theory of strict liability in tort. In connection with that theory, you are instructed: that the law imposes liability upon a seller of a product that causes injury to another or his property due to a defect in the design of the product which makes the product unreasonably dangerous. It is not necessary for the plaintiff to show that the defendant acted unreasonably or negligently; rather, the focus is upon the product itself. A product is unreasonably dangerous when it is dangerous to an extent beyond which would be contemplated by the ordinary consumer who purchases the product. Thus, if you find that the product—in this case it was a caster—had a defect in its design which made the product unreasonably dangerous and that the design defect proximately caused injury to the plaintiff, then you should find, and your verdict should be, for the plaintiff.

The second theory under which plaintiff seeks to recover is the theory of implied warranty of merchantability. This is the second theory.

You are instructed that a person who regularly sells goods of the kind involved in this case is a merchant with respect to such goods. The law imposes upon a merchant a legal obligation concerning the fitness of the merchandise sold. This obligation is called an implied "warranty of merchantability." Under this implied warranty, the goods must be at least of such quality as to be fit for the ordinary purposes for which such goods are used.

You are further instructed that in an action based upon breach of an implied warranty, it makes no difference whether or not the defendant was negligent. If you find that the defendant was a merchant with respect to the goods in question, and if you further find that the goods did not conform to the standard imposed by law, then the defendant breached the implied warranty and the plaintiff is entitled to a finding and a verdict for the plaintiff.

You've heard me talk about injury proximately caused by defect or unfitness and you've heard me speak of damages proximately caused by defect or the unfitness. Now here's what we mean by proximate cause.

An injury or damage is proximately caused by a defective condition or unfitness of a product if it appears from the evidence, direct and circumstantial, that a defective condition did exist and played a substantial part in bringing about the injury or damage and that the injury or damage was either a direct result or a reasonably probable consequence of the defect or unfitness.

Now, if you find that the product, in this case the caster, was defective, or was not fit but that the defect or unfitness was not the proximate cause of the damages to the extent claimed by the plaintiff, then the plaintiff may recover only the portion of damages which did result proximately from the defect or unfitness.

A casual reading of this language supports what appellee concedes: that "since the two theories (*i.e.*, strict liability and implied warranty of merchantability) represent but one tort, it was error to have given both instructions." The trial court, in vacating the jury's verdict on the second theory, recognized this principle but characterized the instruction with respect to the second theory as being not one of tort, but of

---

**4.** Plaintiff's pleadings identify the claims as (1) failure to warn, (2) breach of warranty for a particular purpose and (3) negligence.

contract, and therefore unwarranted and superfluous.

The trial court may have been right, therefore, in recognizing that its first instruction on strict liability "adequately" placed before the jury any claim as to tortious breach of warranty. It was wrong in concluding, "upon review of the record," that its instruction on breach of warranty, which made no mention of privity of contract, did anything more than tell the jury it could impose tort liability on the defendant for putting into the stream of commerce a defective product, which defect caused injury to a human being.[5] The instruction set the stage for the jury, in ruling for appellee under the strict liability count, to find that the product was not unreasonably dangerous; yet it awarded appellant $150,000 under the warranty count because the product was defective, or not fit for the ordinary purpose for which it was to be used and because the defect caused the injury. The findings, that the product was not unreasonably dangerous on one hand,[6] and yet on the other hand, so unreasonably fit for its intended purpose as to cause injury (and therefore unreasonably dangerous), are so inconsistent as to neutralize each other. *See* 76 Am.Jur.2d *Trial* § 1196 at 158 (1975) ("[w]here several findings are made, such findings must be consistent with each other, and where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way. Inconsistent and conflict-

ing findings in special verdicts ... neutralize each and must be disregarded.").

There is no view of this case that can make these findings consistent, or that can restore, in the absence of a new trial, one of the two verdicts. The trial court, having given the instruction that erroneously infected both verdicts, could not cure the error by validating one and ruling, after the fact, that the other was superfluous.

The judgment is reversed and the case remanded for a new trial.

*So ordered.*

FERREN, Associate Judge, concurring:

Appellant Bowler filed a complaint alleging three counts: strict liability (the chair casters were "defective" and "unreasonably dangerous"); implied warranty (breach of implied warranty of the chair's "fitness for its particular purpose"); and negligence.[1] The trial court granted appellee Stewart–Warner Corp.'s motion for a directed verdict as to the alleged breach of warranty and negligence but, interestingly, kept a warranty count alive by instructing the jury on the implied warranty of merchantability, as well as on strict liability. The trial court accordingly submitted the case to the jury with instructions applicable to: (1) strict products liability under the RESTATEMENT (SECOND) OF TORTS § 402A (1965), and (2) the implied warranty of merchantability under the Uniform Commercial Code (UCC), D.C.Code § 28:2–314(2)(c) (1981).[2]

---

**5.** See *Payne, supra,* 486 A.2d at 720, which states:

This warranty liability was instead to be a form of strict liability: a plaintiff could recover if he established, first, that the product was defective, *i.e.,* not reasonably fit for its intended purpose or not of merchantable quality; and second, that as a result of the defect, the product caused injury.

(Citing *Picker X–Ray, supra,* 185 A.2d at 922); *see also Berman, supra,* 391 A.2d 1357; *Cottom, supra,* 262 A.2d at 809.

**6.** Contrary to the suggestion in the concurring opinion at page 357, *Payne* does not address the question of whether the phrase "unreasonably dangerous" is a part of a RESTATEMENT § 402A

instruction; the issue was not before us and we did not purport to decide it. Nothing on the referenced pages of *Payne, supra,* 486 A.2d at 722–23 even hints that we did.

**1.** Because of the language used in the complaint, it is clear appellant alleged strict liability based on the RESTATEMENT (SECOND) OF TORTS § 402A (1965) and a breach of implied warranty under the Uniform Commercial Code, D.C.Code § 28:2–315 (1981).

**2.** *See* Standardized Civil Jury Instructions for the District of Columbia §§ 11–11 (for RESTATEMENT § 402A) ("product unreasonably dangerous") and 11–6 (for UCC § 2–314) (goods unfit "for the ordinary purposes for which such goods are used") (1981).

The jury found against Ms. Bowler on the first theory and for her on the second. The trial court then entered judgment n.o.v. for Stewart–Warner Corp. The court, concluding it had been wrong, ruled that Ms. Bowler had not been entitled to the instruction on a "contract-oriented" implied warranty claim under § 28:2–314 because, as an employee of the purchaser, she lacked privity with the manufacturer. The court further ruled that, although there can be a distinct "tortious breach of warranty" action for personal injuries, that theory "requires proof of an 'unreasonably dangerous' defect as does the strict liability theory." According to the court, these "two theories are co-extensive and effectively identical."[3] Thus, said the court, by giving an instruction on strict liability, "a separate instruction on tortious breach of implied warranty was not required." The verdict rejecting Ms. Bowler's tort claim would therefore stand.

I agree that we must reverse; Ms. Bowler is entitled to a new trial. The trial court correctly concluded that any tort-based implied warranty claim (if such an action still exists) will always be co-extensive with a strict tort liability claim, *see supra* note 3, and thus that the jury found against Ms. Bowler on any possible tort claim. Contrary to the trial court's ruling, however, in this jurisdiction privity is not an element of the implied warranty of merchantability under the Uniform Commercial Code. *See infra* Part III.A. Accordingly, that theory of liability is available to Ms. Bowler on this record. This, however, does not mean that the verdict on implied warranty in Ms.

Bowler's favor should be reinstated. In this jurisdiction, the implied warranty standard of liability under § 28:2–314(2)(c) is intended to be the same as the tort standard under RESTATEMENT § 402A, despite radically different instructional language. *See supra* note 2. Because of inconsistent verdicts on the implied warranty and strict liability counts, therefore, we must vacate the judgment n.o.v. and remand for a new trial.

To reach this result, an analysis is required showing why the trial court erred in concluding that a privity requirement bars recovery under § 28:2–314(2)(c). Furthermore, proper resolution of the appeal requires an answer to the ultimate question, which the lead opinion does not address: how the trial court should instruct the jury on remand. I write separately to discuss these issues, as well as others necessary or useful along the way.

## I.

For background in understanding the questions presented, it is useful to note the analysis in *Gumbs v. International Harvester Inc.*, 718 F.2d 88 (3d Cir.1983), a case analytically identical to the one before us. There, the plaintiff was injured in an accident allegedly caused by a defective U-bolt in an axle of the truck he was driving. The trial court submitted to the jury the question of liability under separate instructions incorporating the same two theories at issue here: (1) strict products liability under RESTATEMENT § 402A, and (2) the implied warranty of merchantability under UCC § 2–314(2)(c).[4] The jury in *Gumbs*

3. The trial court was adverting here to RESTATEMENT (SECOND) OF TORTS § 402A common m, which states in part:

A number of courts, seeking a theoretical basis for the [strict] liability [in tort], have resorted to a "warranty," either running with the goods sold, by analogy to covenants running with the land, or made directly to the consumer without contract.... [W]arranty was in its origin a matter of tort liability, and it is generally agreed that a tort action will still lie for its breach.... There is nothing in this Section which would prevent any court from treating the rule stated as a matter of "warranty" to the user or consumer. But if this is done, it should be recognized and un-

derstood that the "warranty" is a very different kind of warranty from those usually found in the sale of goods, and that it is not subject to the various contract rules which have grown up to surround such sales.

Accordingly, for jurisdictions adopting RESTATEMENT § 402A, any implied warranty in tort would be subsumed under the language of that provision, as the trial court indicated.

4. In *Gumbs*, although the complaint alleged violations of RESTATEMENT § 402A and of UCC § 2–314, the plaintiff persuaded the trial court to instruct the jury as well on the theory of implied warranty of fitness for a particular purpose, pursuant to UCC § 2–315. Surprisingly, however, the trial court did not give three in-

found for defendant on the first but for plaintiff on the second. The United States Court of Appeals for the Third Circuit, applying the law of the Virgin Islands— which incorporated the same RESTATEMENT and UCC provisions applicable in the District of Columbia—"conclude[d] that the requisites for liability under sections 402A and 2–314 are, under the facts of this case, coextensive." *Gumbs*, 718 F.2d at 90. The court accordingly "set aside as irreconcilably inconsistent, the jury's findings that a truck chassis manufactured and sold by defendant, International Harvester ("Harvester") was not defective and unreasonably dangerous, but that the sale breached Harvester's implied warranty of merchantability." *Id.* The court ordered a new trial—as we do here.

It is easy to discern why the jury in *Gumbs*, as well as the jury in this case, found no liability under § 402A but found for plaintiff-appellant under UCC § 2–314(2)(c): the language of the § 402A instruction (the product must be "defective" and "unreasonably dangerous") suggests a more difficult standard of liability for a plaintiff to meet than does the language of the instruction applicable to § 2–314(2)(c) (the product must be unfit "for the ordinary purposes for which such goods are used"). *See supra* note 2. As the court in *Gumbs* put it, "the phrase 'unreasonably dangerous' can suggest a higher standard of defect" than the test applicable to the implied warranty of merchantability. 718 F.2d at 95 n. 11. *See also Dooms v. Stewart Bolling & Co.*, 68 Mich.App. 5, 15 n. 6, 241 N.W.2d 738, 743 n. 6 (1976) (scope of strict liability in tort and warranty of fitness differ: "A particular product could be unfit for the use intended without being unreasonably dangerous.").

*Gumbs* did not reformulate the jury instructions to make them appear to reflect more clearly the same standard of liability.

Indeed, the federal court stopped short (perhaps because a state law question was involved), declining even to address how the jury should be instructed on remand. Failing to require an election of remedies, the court therefore left open the possibility of the same irreconcilable result after a second trial. We confront that very problem here. Unlike the *Gumbs* court, we should deal with it directly.

In proceeding with the inquiry, we have to answer four questions: (1) What is a "standard of liability," and how is it related to the "theories of liability" embraced, respectively, by RESTATEMENT § 402A and § 28:2–314(2)(c)? (2) In the District of Columbia, are the standards of liability under § 402A and § 28:2–314(2)(c) intended to be different or the same? (3) On the record here, are both the implied warranty and strict liability theories, incorporating their respective standards of liability, available to plaintiff-appellant? (4) If so, on remand, how should the trial court deal with the problem created by the two standardized jury instructions, *see supra* note 2, that appear to suggest the standards of liability under § 402A and § 28:2–314(2)(c), respectively, are different?

## II.

A "standard of liability," in the context here, is the degree of defectiveness or unfitness of a product required for the imposition of liability. The standard of liability, therefore, is only one of a number of possible elements of liability (*e.g.*, proximate cause, foreseeability) that must be combined with possible exclusions from coverage (*e.g.*, disclaimer, privity) and with possible categories of damage (*e.g.*, personal injury, property damage, economic loss), in order to define when recovery under each theory of liability is possible. We are not focusing, therefore, on the question wheth-

structions; the court merged the two implied warranty theories under one heading: the jury could find the claimed breach of implied warranty of *merchantability* if it found either a breach of that warranty or a breach of the *implied* warranty of fitness for a particular purpose—or both. 718 F.2d at 91. The court of appeals found no evidentiary basis for the

§ 2–315 (particular purpose) theory, ruled that this instruction should not have been given, and concluded that, because of insufficient evidence under § 2–315, the verdict must have been premised on § 2–314. 718 F.2d at 93–94. The court then analyzed whether the jury properly could consider the evidence under both § 402A and § 2–314, with different outcomes.

er two theories of liability—implied warranty of merchantability and strict products liability—are conceptually the same. They are not. Although, historically, they both have roots in the law of torts, *see Berman v. Watergate West, Inc.*, 391 A.2d 1351, 1355–56 (D.C.1978), today they reflect the respective dimensions of a legislatively enacted commercial law and a judicially created tort law. Significantly, therefore, even though these theories may incorporate the same standard of liability, they potentially empower different classes of plaintiffs to sue, and may expose different classes of defendants to liability, depending on the applicability or inapplicability of a variety of elements, exclusions, and injuries—a subject addressed below in Part III.

It follows that the first substantive question presented—whether the standards of liability are different or the same under § 402A and § 28:2–314(2)(c), respectively—becomes relevant only when the trial record supports the claimed liability and damages under both theories, given all the elements and exclusions. If both theories apply but the standards are different, then there would appear to be no problem with submitting both theories of liability to the jury under instructions that make the differences clear. If, however, both theories apply and the standards under each are the same, then submission of more than one theory to the jury would be redundant, and the court would have to decide which instruction to give when the record supports submission of both. *See, e.g., Hawkeye–Security Ins. Co. v. Ford Motor Co.*, 174 N.W.2d 672, 684–85 (Iowa 1970) ("[o]rdinarily strict liability in tort is in lieu of one or

more of the implied warranty theories" and submission of both theories to jury "would be exceptional").[5]

A number of appellate courts have said the standards of liability for implied warranty and strict tort liability are the same, but these courts have spoken in contexts that differ from the litigation confronting us here. For example, they have held harmless the granting of summary judgment on one theory when the other was submitted to the jury, *see McQuiston v. K–Mart Corp.*, 796 F.2d 1346, 1349 (11th Cir.1986) (applying Florida law), or have found harmless the refusal to instruct on implied warranty when the court did instruct on strict tort liability, *see Fisher v. Gate City Steel Corp.*, 190 Neb. 699, 703, 211 N.W.2d 914, 917 (1973).

In the District of Columbia, the law has evolved in a way that does not make clear how the law of implied warranty and strict tort liability interact. This court adopted the doctrine of implied warranty liability and eliminated the privity requirement in *Picker X–Ray Corp. v. General Motors Corp.*, 185 A.2d 919 (D.C.1962). The elements of this theory were proof of a " 'defective' " product—defined as a failure either to be " 'reasonably fit for the particular purpose intended' " or of " 'merchantable quality' "—and proof that "as a result of being 'defective,' the product causes personal injury or property damage." *Id.* at 922 (footnote omitted). Later, in *Cottom v. McGuire Funeral Service, Inc.*, 262 A.2d 807 (D.C.1970) (*Cottom I*), we expressly declined to adopt a tort theory of strict

---

**5.** This question of deciding whether one or two standards of liability are at issue is premised, of course, not only the applicability of two legal theories to the facts of record but, even more fundamentally, on an assumption that the jurisdiction recognizes both theories of liability. That is not always the case. Indeed, recognizing the substantial overlap, if not the congruency, of strict products liability in tort and the implied warranty of merchantability under the UCC—and considering that legislative adoption of the UCC arguably preempts judicial adoption of any different theory of strict liability—several jurisdictions have declined to adopt the tort theory when the UCC was in place. *See, e.g., Swartz v. General Motors Corp.*, 375 Mass. 628,

378 N.E.2d 61 (1978) (no strict liability in tort apart from breach of warranty under UCC); *National Crane Corp. v. Ohio Steel Tube Co.*, 213 Neb. 782, 789, 332 N.W.2d 39, 44 (1983) (proper relationship between tort law and UCC dictates purchaser cannot recover economic losses from seller manufacturer on strict liability tort claim in absence of physical harm to person or property caused by defective product). *See generally* Annot., *Pre-emption of Strict Liability in Tort by Provisions of UCC Article 2*, 15 A.L.R. 4th 791 (1982). But *in most states both theories of liability are alive, and the question whether these incorporate one or two standards of liability eventually must be addressed.*

liability because, at least as to the facts of that case, warranty theory adequately protected users and consumers.

It has been said that the current doctrines of implied warranty and strict liability in tort are but two labels for the same legal right and remedy, as the governing principles are identical. This to a large extent is true. The differences between strict liability in tort and implied warranty, if any, are conceptual.

\*   \*   \*   \*   \*   \*

Whether contract or tort, there is a liability imposed for injury caused by placing a defective product into the stream of commerce in the District of Columbia. For present purposes we are not required to adopt the theory of strict liability in tort with all its implications.

*Id.* at 808, 809 (footnotes omitted). We added that we were "not confronted with any conceptual problems which may arise from calling the action warranty or tort, *e.g.,* the effect of a warranty disclaimer or the effect on a suit only for a commercial loss and not for personal injury or property damage." *Id.* at 809 n. 8. As of the time of *Cottom I,* therefore, "[s]trict liability in tort ha[d] been considered but never adopted in the District of Columbia." J. BEASLEY, PRODUCTS LIABILITY AND THE UN-REASONABLY DANGEROUS REQUIREMENT 323 (1981). *See also Johns v. Cottom,* 284 A.2d 50, 51 n. 1 (D.C.1971) (*Cottom II*) (breach of implied warranty was "only theory seriously advanced on that previous appeal").

Several years after the *Cottom* cases, in *Berman v. Watergate West, Inc.,* 391 A.2d 1351, 1357 (D.C.1978), a division of this court said *Cottom I* implied that this court *had* adopted "the concept of strict liability in tort." Apparently the division did so, despite *Cottom I*'s own disclaimer, because of the language in *Cottom I,* quoted above, stating in effect that, while there are conceptual differences between the theories of implied warranty and strict liability in tort, the standards of liability are the same. The *Berman* court also quoted RE-STATEMENT § 402A in full without expressly adopting it. *Id.* at 1356.

A year later in *Fisher v. Sibley Memorial Hospital,* 403 A.2d 1130 (D.C.1979), another division of this court sustained a directed verdict ruling that strict tort liability and the implied warranty of merchantability under D.C.Code § 28:2–314(2)(c) were not available to a plaintiff suing to recover for personal injuries caused by hepatitis received from a blood transfusion. The court reasoned that a blood transfusion was a service, not a sale of goods triggering a warranty. *Sibley Memorial Hospital,* 403 A.2d at 1133. The court then implied (and arguably held) that a blood transfusion, like a rabies vaccine, was an "unavoidably unsafe product" within the meaning of RESTATEMENT § 402A comment k, for which there is no liability because it had to be used despite the high degree of risk. *Id.* at 1133–34. A concurring judge wrote separately to say that, in her judgment, "this court adopted the § 402A theory of strict liability in tort in *Berman....*" *Id. Sibley Memorial Hospital,* therefore, reflects two developments: reliance on § 402A, if not formal recognition of § 402A as the law of the District of Columbia, *see id.* at 1133 n. 8, and recognition that implied warranty liability had been codified in D.C.Code § 28:2–314 (1981), *see id.* at 1132.

In *Payne v. Soft Sheen Products, Inc.,* 486 A.2d 712, 719 (D.C.1985), we said that "[t]his jurisdiction recognizes both tort and warranty theories of product liability," and that "the plaintiff's burden under implied warranty and strict liability theories is identical." We then ruled that, on the trial record, "where no issues unique to warranty, like disclaimer or notice, are presented, a claim of strict liability in tort was effectively made out by the count in the complaint for breach of warranty." *Id.* at 720. We held in *Payne,* that, in order to avoid strict liability for an "unreasonably dangerous" product under § 402A, the manufacturer of a permanent wave solution which had caused second-degree burns had to have provided an adequate warning concerning the possibility of burns. Moreover, we concluded that the trial court erred in ruling the plaintiff had failed to present the issue of adequate warning to the jury. *Id.*

at 723. In the meantime, the Standardized Civil Jury Instruction for strict tort liability had been crafted to incorporate § 402A, including the "unreasonably dangerous" criterion. *See supra* note 2.

Interestingly, *Berman* purported to recognize adoption of strict tort liability in *Cottom I*, which employed merely a " 'defective' " product standard of liability. *Berman*, 391 A.2d at 1357. But *Berman* also cited § 402A. By the time this court decided *Payne*, the division appeared to articulate its holding by reference to the "unreasonably dangerous" criterion in § 402A. I believe this court, therefore, adopted, and then appeared to raise, the standard of strict tort liability, while at the same time stating that that standard is the same as the one for implied warranty liability. In the meantime, in *Sibley Memorial Hospital* this court equated implied warranty liability with § 28:2–314(2)(c) liability, which is certainly consistent with the implied warranty theory adopted in *Picker X–Ray Corp.* and then recognized in *Cottom I*.

As I see it, therefore, (1) this court has adopted the theory of strict tort liability under RESTATEMENT § 402A; (2) in doing so we intended to reflect the same standard of liability inherent in implied warranty theory; (3) implied warranty theory has been codified in § 28:2–314(2)(c); and (4) this jurisdiction therefore considers the standard of liability under § 402A and § 28:2–314(2)(c) to be the same.

Interestingly, however, none of the cases in the District of Columbia or in the other jurisdiction cited earlier has caused the courts to come to grips with the language of the instructions applicable to each supposedly identical standard of liability. *See supra* note 2. It is a case like *Gumbs* or the present one, where the jury received instructions under both theories, that compels an appellate court to focus not only on the standards of liability but also on the language of the respective instructions.

## III.

Before the instructional issue becomes germane to a lawsuit, however, the trial court must determine whether both theories of liability (incorporating the same standard of liability) are available to a plaintiff on the facts of record. Despite having a "common core" of elements creating the same standard of liability,[6] RESTATEMENT § 402A and UCC § 2–314(2)(c) are conceptually separate theories of liability potentially incorporating different elements and exclusions and addressing different injuries. In a given case, therefore, such differences may make only one or the other theory of liability—and thus only Standardized Civil Jury Instruction 11–11 or Instruction 11–6—applicable. In the present case, for example, in granting the judgment n.o.v., the trial court eliminated the implied warranty count in the belief that, irrespective of the standard of liability, § 28:2–314(2)(c) had a privity requirement which appellant did not meet. We therefore have to resolve this issue, for, if the trial court was correct, there would be no need for a remand. Accordingly, I turn to the privity issue, but, to provide a more complete perspective, I shall broaden the inquiry somewhat to embrace a few other significant differences between the two theories of liability.

In the first place, there is at least one practical difference applicable to the two theories of liability: the statute of limitations for § 402A is three years,[7] whereas the one for § 28:2–314(2)(c) is four years (unless contractually reduced).[8] But what about substantive differences? Without purporting to be exclusive, I will identify three areas of possible difference: the relevance of privity, including the liability of a remote manufacturer; contractual limita-

---

6. *Gumbs,* 718 F.2d at 95; *see also Payne,* 486 A.2d at 719; *Cottom I,* 262 A.2d at 808.

7. D.C.Code § 12–301(8) (1981); *see Dawson v. Eli Lilly and Co.,* 543 F.Supp. 1330, 1332 (D.D.C. 1982).

8. D.C.Code § 28:2–725(1) (1981); *see also id.* at § 12–301 (actions governed by § 28:2–725 exempt from § 12–301 general statute of limitations provision); 5 R. ANDERSON, UNIFORM COMMERCIAL CODE § 2–725:59 (1984) (and cases cited).

tions of liability; and the categories of damages available.

## A.

As indicated earlier, in some jurisdictions UCC § 2–314 has been interpreted to incorporate a privity requirement, *see* 3 R. ANDERSON, UNIFORM COMMERCIAL CODE § 2–314:96 (1983) (and cases cited therein), whereas § 402A has none, *see* RESTATEMENT § 402A, Caveat 1; *see also* 2 AMERICAN LAW OF PRODUCTS LIABILITY 3d § 16:52 (1987) (collecting cases). D.C.Code § 28:2–318 (1981) provides:

> A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section.

The official UCC Comment makes clear, however, that although § 2–318 "expressly includes as beneficiaries within its provisions the family, household, and guests of the purchaser," that list is not necessarily exclusive. *See* 3 R. ANDERSON, § 2–318:1. "Beyond this, the section is neutral and is not intended to enlarge or restrict the developing case law on whether the seller's warranties, given to his buyer who resells, extend to other persons in the distributive chain." *Id.* While the courts of any UCC jurisdiction are thus free to limit liability to the circle of privity expressly created by § 2–318, they are likewise free to extend or altogether eliminate the privity requirement.

Shortly before the effective date of the Uniform Commercial Code in this jurisdiction, we held that, "regardless of the lack of contractual privity, the implied warranty of fitness and merchantability runs to the ultimate consumer for whose use the arti-

cle or personal property had been purchased." *Picker X–Ray Corp.*, 185 A.2d at 923. We reaffirmed this ruling after adoption of the Code. *See Cottom I*, 262 A.2d at 808, 809 n. 12. Thus, we have no "horizontal privity" requirement in this jurisdiction. *See Kassab v. Central Soya*, 432 Pa. 217, 231, 246 A.2d 848, 855 (1968) (Horizontal privity concerns "who, besides the purchaser, has a right of action against the manufacturer or seller of a defective product."). It follows that plaintiff-appellant, as an employee of the purchaser, has standing to sue under § 28:2–314(2)(c). *See, e.g., Delta Oxygen Co. v. Scott*, 238 Ark. 534, 546, 383 S.W.2d 885, 893 (1964); *McNally v. Nicholson Mfg. Co.*, 313 A.2d 913, 921 (Me.1973); *see also Boddie v. Litton Unit Handling Systems*, 118 Ill. App.3d 520, 532, 74 Ill.Dec. 112, 121, 455 N.E.2d 142, 151 (1983) (dicta).

Although there are no privity limitations on the chain of users of a defective product who may sue under § 402A or § 28:2–314(2)(c), there is another kind of privity question, commonly called a question of "vertical privity": whether § 28:2–314(2)(c) affords relief against a remote manufacturer, since the warranty provisions under Article 2 of the UCC flow from the "seller." *See* D.C.Code §§ 28:2–312 through 28:2–318 (1981); *Kassab*, 432 Pa. at 231, 246 A.2d at 855 (Vertical privity concerns "who, besides the immediate seller, is liable to the consumer for injuries caused by the defective product."). In the District of Columbia there is no vertical privity requirement for suits based on breach of implied warranty. *See Cottom I*, 262 A.2d at 810 (wholesaler "cannot insulate himself from liability solely because he did not 'deal' with the injured party"); *Picker X–Ray Corp.*, 185 A.2d at 923 (buyer of automobile can sue manufacturer for breach of implied warranty regardless of lack of contractual privity).[9] The trial

---

9. Many other jurisdictions also no longer require vertical privity and thus permit recovery under UCC § 2–314(2)(c) against a remote manufacturer who was the initial seller. *See Union Supply Co. v. Pust*, 196 Colo. 162, 175, 583 P.2d 276, 285 (1978) (en banc) (personal injury); *Ber-*

*ry v. G.D. Searle & Co.*, 56 Ill.2d 548, 557, 309 N.E.2d 550, 556 (1974) (personal injury); *Nobility Homes of Texas, Inc. v. Shivers*, 557 S.W.2d 77, 80 (Tex.1977) (economic loss); 3 R. ANDERSON § 2–314:127 (and cases cited). *But see Zepik v. Ceeco Pool and Supply, Inc.*, 637 F.Supp. 444,

court therefore erred in granting the judgment n.o.v. for lack of privity.

### B.

RESTATEMENT § 402A does not permit a manufacturer or seller to disclaim strict liability, RESTATEMENT § 402A comment m, whereas the UCC does permit exclusion or modification of implied warranties if exclusionary or modifying language is used and there are appropriate opportunities to inspect the product. *See* D.C.Code § 28:2–316. These provisions, however, do not apply to sales of consumer goods unless particular defects are "noted conspicuously in writing at the time of sale." D.C. Code § 28:2–316.1 (1989 Supp.).

### C.

D.C.Code § 28: 2–715(2)(b) (1981) recognizes the availability of consequential damages for "injury to person or property proximately resulting from any breach of warranty." Thus, both RESTATEMENT § 402A and the UCC warranty of merchantability, as interpreted in this jurisdiction, allow recovery for both personal injury and property damage. *See Payne*, 486 A.2d at 719 (reversing directed verdict for manufacturer in suit for personal injuries alleging negligence and breach of implied warranty); *Berman*, 391 A.2d at 1360 (reversing summary judgment for defendants in suit for property damage based on alleged breach of implied warranty).

The caselaw divides over the recovery of economic losses. Damages based on insufficient product value or on loss of anticipated profits reasonably foreseeable by the seller may generally be recovered in suits alleging breach of implied warranty. *See* D.C.Code §§ 28:2–714(2), 28:2–715(2)(a); 4 R. ANDERSON, UNIFORM COMMERCIAL CODE § 2–715: 24. But the states are divided over whether economic losses are recovera-

ble in suits based on strict products liability. *Compare Seely v. White Motor Co.*, 63 Cal.2d 9, 403 P.2d 145, 45 Cal.Rptr. 17 (1965) (economic loss recoverable under implied warranty but not strict liability theory) *with Santor v. A. & M. Karagheusian, Inc.*, 44 N.J. 52, 207 A.2d 305 (1965) (economic loss recoverable under either implied warranty or strict liability theory). *See also Nobility Homes of Texas, Inc. v. Shivers*, 557 S.W.2d 77, 79 n. 3 (Tex.1977) (collecting cases). Some courts, moreover, have limited recovery of economic loss to warranty actions against persons with whom the claimant is in privity, *see, e.g., Necktas v. General Motors Corp.*, 357 Mass. 546, 548–51, 259 N.E.2d 234, 235–36 (1970); *Price v. Gatlin*, 241 Or. 315, 316, 405 P.2d 502, 503 (1965) (en banc), although others have allowed warranty actions for economic loss against a manufacturer, for example, without regard to privity, *see, e.g., Kassab*, 432 Pa. at 223–35, 246 A.2d at 851–56; *Nobility Homes of Texas, Inc.*, 557 S.W.2d at 79–83. We have not decided whether economic loss is recoverable under strict tort liability, as well as breach of warranty, theory. *See Cottom I*, 262 A.2d at 809 & n. 8.[10]

### IV.

On this record, plaintiff-appellant, Ms. Bowler, has available on remand both § 402A and § 28: 2–314(2)(c). Clearly, both are available for the personal injury alleged here (no economic loss is at issue), and there is no question of a disclaimer for implied warranties. There is no question, moreover, that appellant used the chair casters for "the ordinary purposes for which such goods are used." *See supra* note 10. Nor are there "horizontal" or "vertical" privity bars in this jurisdiction; plaintiff-appellant, as the buyer's employ-

---

450 (N.D.Ind.1986) (Indiana law) (privity required for personal injury claim); *Richards v. Goerg Boat & Motors, Inc.*, 179 Ind.App. 102, 384 N.E.2d 1084, 1092 (1979) (holding same for economic loss).

**10.** I merely note another possible distinction between § 402A and § 28:2–314(2)(c) liability

which this court has not addressed. If "goods are employed for a purpose other than 'the ordinary purposes for which such goods are used,'" a manufacturer may not be liable under § 28:2–314(2)(c), *Nobility Homes of Texas, Inc.*, 557 S.W.2d at 82, but would not necessarily be exempt from liability under § 402A.

ee-user of the allegedly defective product, has standing to sue the manufacturer.

Therefore, we finally reach the issue of what instruction the jury should receive on remand. I have not found a case in which a court has held that the standards of liability under § 402A and § 2–314(2)(c) are intended to be the same, and then focused on the possibility that the "unreasonably dangerous" language in a § 402A instruction suggests a more difficult standard for the plaintiff to meet than the instruction under § 2–314(2)(c)—and then decided what to do. There is caselaw development, however, showing that for reasons unrelated to comparisons with § 2–314(2)(c), some states have eliminated (or declined to adopt) the "unreasonably dangerous" language in their strict liability instructions under § 402A and now "explain the concept of defect in terms similar to the warranty theory of defect." *See Gumbs*, 718 F.2d at 95 n. 11; *see generally* J. BEASLEY at 101–04.

In *Cronin v. J.B.E. Olson Corp.*, 8 Cal.3d 121, 501 P.2d 1153, 104 Cal.Rptr. 433 (1972), the Supreme Court of California sustained the trial court's refusal to add "unreasonably dangerous" to the standard instruction on strict liability derived from that court's landmark decision in *Greenman v. Yuba Power Products, Inc.*, 59 Cal.2d 57, 377 P.2d 897, 27 Cal.Rptr. 697 (1963) (Traynor, J.). The standard instruction referred only to liability for "injuries proximately caused by defects in the manufacture or design of the article of which the user was not aware, provided the article was being used for the purpose for which it was designed and intended to be used." *Cronin*, 8 Cal.3d at 178 n. 7, 501 P.2d at 1158 n. 7, 104 Cal.Rptr. at 438 n. 7. The California court cited two reasons for declining to approve the "unreasonably dangerous" language of § 402A: it would burden "the injured plaintiff with proof of an element which rings of negligence," which is not required under strict liability theory, and be susceptible "to a literal reading which would require the finders of fact to conclude that the product is, first, defective *and, second,* unreasonably dangerous"—a "bifurcated standard ... of necessity more

difficult to prove that a unitary one." *Id.* at 123–24, 501 P.2d at 1162, 104 Cal.Rptr. at 442.

Several years later in *Azzarello v. Black Bros. Co.*, 480 Pa. 547, 553–59, 391 A.2d 1020, 1024–27 (1978), the Supreme Court of Pennsylvania, relying on *Cronin*, provided an even more thorough explanation of its own position by elaborating the history behind the American Law Institute's RESTATE-MENT § 402A, specifically the controversial language establishing liability for selling a "product in a defective condition unreasonably dangerous to the user or consumer or to his property." The limiting phrase "unreasonably dangerous," said the court, was included to prevent treatment of the seller as "an insurer of all injuries caused by the product." *Id.* at 553, 391 A.2d at 1024. But it is misleading, according to the court. Section 402A uses language that may sound like a negligence test to some lay jurors and like an ultrahazardous or abnormally dangerous activity test to others, neither of which was intended. *Id.* at 555, 391 A.2d at 1025 & n. 8 (citations omitted). The court concluded that the RESTATE-MENT's reference to an "unreasonably dangerous" defective condition was intended exclusively to guide judges and lawyers in deciding a question of law: whether, on a particular record, a question of strict liability should be presented to the jury. *Id.* at 557, 391 A.2d at 1026. It was not intended as the formulation of an instruction for jurors, who could not be expected to understand the legal subtleties underlying the term. The § 402A instruction, according to the court, should, very simply, ask the jury to consider whether the product is "safe for its intended use or possessing any feature that renders it unsafe for the intended use." *Id.* at 559, 391 A.2d at 1027 (footnote omitted). Interestingly, that instructional standard, like the one in California, is very close to the UCC's language in § 28:2–314(2)(c).

A year later, also relying on *Cronin*, the Supreme Court of New Jersey followed California and Pennsylvania in rejecting "unreasonably dangerous" language. *Suter v. San Angelo Foundry & Machine Co.*, 81 N.J. 150, 406 A.2d 140 (1979). The court suggested a strict liability instruction charging the jury in terms of "whether the

product was reasonably fit, suitable and safe for its intended or foreseeable purposes...." *Id.* at 176, 406 A.2d at 153.

While several states, therefore, have eliminated "unreasonably dangerous" from the jury instructions for strict tort liability under § 402A, resulting in an instruction virtually congruent with the one applicable to a breach of implied warranty, other states—as well as the District of Columbia—have not done so. As a result, in these latter jurisdictions liability under § 402A *appears* to be "narrower than the merchantability warranty liability" under UCC § 2–314(2)(c). 3 R. ANDERSON § 2–314:56. These states accordingly appear to have recognized a distinction between (1) strict liability limited to physical harm to person or property from an "unreasonably dangerous" defective condition and (2) a less restricted warranty liability applicable to so-called economic injury as well as to personal injury and property damage.[11] As discussed earlier, however, this apparent distinction is not true for the District of Columbia.

This division of the court, therefore, is not free to reconcile standard jury instructions 11–11 and 11–6, *supra* note 2, and thus to rule for appellant,[12] by deeming § 402A to provide for a different, more restrictive standard of liability than § 28:2–314(2)(c). Nor, on the other hand, are we willing to reconcile these instructions by repudiating the "unreasonably dangerous" language of § 402A now contained in local instruction 11–11, as the courts did in *Cronin, Azzarello,* and *Suter.* It is true that, in recognizing the applicability of § 402A in this jurisdiction and *equating* it with implied warranty liability, no division of this court has acknowledged, let alone addressed, the differences in language under RESTATEMENT § 402A and

UCC § 2–314(2)(c) that give rise to jury instructions which appear to reflect *different* standards of liability. Thus, perhaps we would be free to join the states that have said the words "unreasonably dangerous" do not belong in a § 402A instruction, although the division's reference to that language in *Payne,* 486 A.2d at 722–23, may suggest that we have stamped that instructional language with approval. In any event, no one has asked us to tinker with the standardized jury instructions, and the issue is too complex to justify a *sua sponte* venture, unaided by briefs and argument, for purposes of the remand. Thus, we must rule—and the trial court must act—not only on the premise that the standards of liability are the same under § 402A and § 28:2–314(2)(c), respectively, but also on the understanding that standard instructions 11–11 and 11–6, however different their articulation, are intended to mean the same thing.

The question then becomes whether a plaintiff who asserts implied warranty and strict tort liability claims against a seller or manufacturer should be allowed to present those claims to the jury under more than one instruction. Understandably, a plaintiff on one set of facts may wish to sue on one or more of: an express guarantee, an express warranty, an implied warranty of merchantability, an implied warranty of fitness for a particular purpose, negligence, fraud, and strict tort liability. *See* 3 R. ANDERSON § 2–314:44. But when it is time to go to the jury, the court cannot properly instruct *both* on implied warranty of merchantability and on strict tort liability; at least as to these two theories incorporating the same standard of liability, an election must be made.

On remand, because both theories of liability are applicable but only one instruc-

---

**11.** Sometimes, however, this more "liberal" warranty standard is applicable in fewer instances because of exclusions not applicable under § 402A. *See generally Nobility Homes of Texas, Inc.,* 557 S.W.2d at 78–83. For example, in some jurisdictions a privity requirement limits the classes of plaintiffs or defendants under a warranty theory, and, unlike RESTATEMENT § 402A, UCC § 2–316 permits a seller to limit liability by expressly excluding or restricting implied warranties. *Id.*

**12.** Were we to recognize a distinction between the § 402A and § 28:2–314(2)(c) standards of liability, as appellant urges, we would have to reverse and remand for reinstatement of the verdict, for the jury's findings of liability under the second but not the first would not be irreconcilable and, as discussed earlier, there is no privity requirement under § 28:2–314(2)(c) that would bar recovery under that provision.

tion may be given, I believe the trial court must permit the plaintiff to elect which theory of recovery should be submitted to the jury. I perceive no basis for taking that choice away from the party who brought the suit. As it turns out, therefore, the incongruity in language articulating the standards of liability under RESTATEMENT § 402A (instruction 11–11) and § 28:2–314(2)(c) (instruction 11–6), respectively, becomes irrelevant here because the jury will see only one instruction and Ms. Bowler will have the right to say which one. This same approach should govern future cases where both theories are available. In a case someday where only strict tort liability is at issue (presumably because of some applicable exclusion of implied warranty liability under the UCC), the trial court will be free, subject to our eventual review, to determine whether to use Standardized Civil Jury Instruction 11–11 incorporating the "unreasonably dangerous" language of § 402A, or to fashion a new § 402A instruction and thereby test whether this court has really intended to include "unreasonably dangerous" in the instruction applicable to strict tort liability.