Adam Lee WETZEL, et al., Appellants,

v.

CAPITAL CITY REAL ESTATE,
LLC, Appellee.

No. 12–CV–1218.

District of Columbia Court of Appeals.

Argued March 7, 2013.
Decided Aug. 15, 2013.

Ian Stumpf, Washington, DC, for appellants.

Jason A. Pardo, with whom Russell S. Drazin, Washington, DC, was on the brief, for appellee.

Before THOMPSON and McLEESE, Associate Judges, and RUIZ, Senior Judge.

RUIZ, Senior Judge:

On July 29, 2011, appellants, Adam Lee Wetzel and Jonathan Paul Rushbrook, filed a complaint in the Superior Court of the District of Columbia against appellee, Capital City Real Estate LLC, for fraud, violations of the District of Columbia Consumer Protection Act (CPA), violations of the District of Columbia Consumer Protection Procedures Act (CPPA), breach of contract, breach of express warranty, and strict liability. After filing an answer, appellee moved for judgment on the pleadings and to compel arbitration. At a hearing on December 8, 2011, the trial court first granted appellee's motion to stay the litigation so the parties could pursue arbitration, but subsequently granted appellee's renewed oral motion to dismiss, without prejudice. In December 2011, appellants Wetzel and Rushbrook filed separate motions for reconsideration, both of which were denied on July 20, 2012, in a written order. This appeal followed.

We hold that the trial court erred in granting appellee's motion to dismiss appellants' claims of fraud, violations of the CPPA, and strict liability, but that the trial

court correctly dismissed appellants' claims for violations of the CPA, breach of contract, and breach of express warranty. Thus, we affirm in part, and remand the remaining claims to the trial court for further proceedings.

## I. The Complaint

The complaint alleged the following facts about the parties' relationship and agreement; we will refer to other allegations in the complaint in the context of discussing specific counts. On February 10, 2010, appellant Wetzel executed a Condominium Unit Purchase Agreement for a property located at 57 Bryant Street NW (Unit # 1), with Bryant Street LLC. (Complaint ¶ 17) Appellants learned about the property on the website of appellee, which included marketing documents and photographs of the property, and through a Public Offering Statement concerning the condominium unit. (Complaint ¶¶ 10, 11, 13) The Purchase Agreement and Public Offering Statement were attached to the complaint. (Complaint ¶¶ 16, 17) In addition to advertising the property, appellee, a real estate developer, was actively involved in its renovation. (Complaint ¶¶ 8, 26) At the time of purchase, neither appellant had seen the property in person; appellant Wetzel relied on the photographs on appellee's website, as well as representations made in the Public Offering Statement and Condominium Unit Purchase Agreement.[1] (Complaint ¶¶ 11, 13, 16) In May and August 2010, the property received amounts of rainfall, much of which entered the unit through the walls and a window, destroying the first-floor area. (Complaint ¶¶ 3, 19, 20, 21) The flooding caused extensive water damage and appellants spent $14,732.42 on mold clean-up. (Complaint ¶¶ 27, 28) Appellant Rushbrook

currently lives in the condominium unit. (Complaint ¶¶ 7, 28)

## II. Analysis

The standard of review of an order granting a motion to dismiss is well settled:

> We review an order granting a motion to dismiss *de novo*. *Chamberlain v. Am. Honda Fin. Corp.*, 931 A.2d 1018, 1022 (D.C.2007). In so doing, we apply the same standard the trial court was required to apply, accepting the allegations in the complaint as true and viewing all facts and drawing all reasonable inferences in favor of the plaintiffs. *Murray v. Wells Fargo Home Mort.*, 953 A.2d 308, 316 (D.C.2008). "Any uncertainties or ambiguities" in the complaint "must be resolved in favor of the pleader." *Atkins v. Industrial Telecomms. Ass'n*, 660 A.2d 885, 887 (D.C. 1995).

*Hillbroom v. PricewaterhouseCoopers LLP*, 17 A.3d 566, 573 (D.C.2011).

### A. Fraud

■ Count I of appellants' complaint claimed that appellee made a number of fraudulent representations about the property. (Complaint ¶¶ 42–52) The complaint alleges that, as a direct and proximate result of appellee's misrepresentations, and a natural and foreseeable consequence therefrom, appellants "lost the use of a significant portion of the[ir] condominium" unit and "spent thousands of dollars in mold reclamation services," and appellant Rushbrook was "expos[ed] to unacceptably hazardous air quality." (Complaint ¶¶ 54, 55)

■ "In order to prove fraudulent misrepresentation, a plaintiff must prove '(1) a

---

1. Appellants' agent toured the property. (Complaint ¶ 11) At the time of purchase, appellants were living in the United Kingdom. (Complaint ¶ 10) Appellant Wetzel purchased the property through appellant Rushbrook, who had a power of attorney while appellant Wetzel was in Afghanistan. (Complaint ¶ 6).

false representation, (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action taken ... in reliance upon the representation, (6) which consequently resulted in provable damages.'" *Kumar v. District of Columbia Water & Sewer Auth.*, 25 A.3d 9, 15 (D.C.2011) (quoting *Railan v. Katyal*, 766 A.2d 998, 1009 (D.C. 2001)).

Appellants' complaint alleged that appellee made several false representations, including that (1) the property "was free from structural defects," (2) appellee had secured proper permits for renovation of the property, and (3) "the exterior masonry had a life of 50 additional years," and that appellee misrepresented "the quality and character of the Property's walls." (Complaint ¶¶ 43, 44, 46, 47) Appellants did not specifically allege that these false representations were in reference to a material fact, but when viewing all facts alleged in the complaint and drawing "all reasonable inferences in favor of the plaintiff," it is clear that such allegations were in reference to facts that would be material when determining whether to purchase the property. *Woods v. District of Columbia*, 63 A.3d 551, 553 (D.C.2013) (internal quotation marks, brackets and citation omitted). The complaint alleged that appellee "knew

the Property's true nature and actively, knowingly, and intentionally worked to conceal this truth to sell the Property to an unsuspecting buyer at a price far higher than what the Property was actually worth." (Complaint ¶ 48) Additionally, the complaint alleged that in reliance on the representations, appellant Wetzel decided to purchase the property (Complaint ¶ 53) and appellant Rushbrook decided to live there. (Complaint ¶¶ 65–66) Finally, the complaint alleged that reliance on appellee's misrepresentations resulted in damages including the thousands of dollars spent on mold reclamation, the cost to repair the structure, loss of use, and diminished value of the property. (Complaint ¶¶ 54–56) We conclude that with these allegations, which we accept as true for present purposes, appellants have sufficiently pled their claim for fraud, and thus dismissal of the claim of fraud must be reversed and the claim remanded to the trial court for further proceedings.[2]

## B. District of Columbia Consumer Protection Procedures Act[3]

Another count of appellants' complaint alleged that appellee violated the Consumer Protection Procedures Act, with specific reference to the trade practices identified in D.C.Code § 28–3904(a), (d), (e), (f) and (h) (2009).[4] According to the complaint,

2. The fraud count against appellee is viable, even though appellee was not the seller of the property, because the complaint alleges that appellee itself made fraudulent representations and concealed the true condition of the property and that appellants relied on those misrepresentations to their detriment. Similarly, appellant Rushbrook may bring the claim for fraud even if he was not the purchaser because he alleges that he relied on appellee's fraudulent representations in deciding to live in the property.

3. In addition, the complaint alleges that appellee violated the CPA. *See* D.C. § 28–3801–3864 (2009). However, the complaint points to no specific section of the CPA that could be

applicable in this case. The CPA applies only to "actions to enforce rights arising from a consumer credit sale or a direct installment loan." D.C.Code § 28–3801 (2009). As the complaint does not allege that appellants have any type of financing with appellee, the claim for violations of the CPA fails and was properly dismissed.

4. D.C.Code § 28–3904 (2009) states:
It shall be a violation of this chapter, whether or not any consumer is in fact misled, deceived or damaged thereby, for any person to:
(a) Represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients,

appellee "misrepresented the approval, certification, and characteristics of the basement walls"; "concealed previous long-term and extensive, uncorrected water damage"; represented that "the basement and walls were of a quality and grade that they were not"; misrepresented that "the basement and walls were free from defect"; failed to disclose the material facts that there was "damage to the basement or walls," there "had been previous water damage," and there was "no permit to build the deck"; and misrepresented that the exterior masonry "had a life of 50 or more years." (Complaint ¶ 60) Additionally, the complaint alleged that appellee "actively advertised and marketed [the] defective Property as if it were in newly restored condition without defect"; intentionally misrepresented the property in several statements while having "complete knowledge as to the true condition of the property and the true nature of the permit status"; and "misrepresented the condition of the Property in advertisements it published in an attempt to sell a subpar piece of Property." (Complaint ¶¶ 61–63) Appellant Wetzel alleged that he "specifically relied on those misrepresentations" in deciding to purchase the property at the agreed price, and appellant Rushbrook alleged that he relied on the misrepresentations in advising appellant Wetzel on whether to purchase the property at the agreed-upon price and in deciding to personally live in the residence. (Complaint ¶¶ 65–66)

"*Any person*," "whether acting for the interests of itself . . . or the general public, may bring an action under [the CPPA] in the Superior Court of the District of Columbia seeking relief from the use by *any person* of a trade practice in violation of a law of the District of Columbia." D.C.Code § 28–3905(k)(1) (2009) (emphasis added). Thus, both appellant Wetzel and appellant Rushbrook are able to make claims against appellee under the CPPA. *See Grayson v. AT & T Corp.*, 15 A.3d 219, 247–49 (D.C.2011) (en banc); *Byrd v. Jackson*, 902 A.2d 778, 781 (D.C.2006) (stating that a person can violate the CPPA "whether or not he entered a formal contractual relationship . . . or received money for the services").

The complaint alleged that appellee made "no fewer than 98 misrepresentations" in violation of five separate provisions of the DCCPA. (Complaint ¶ 64) The complaint claimed a violation of D.C.Code § 28–3904(a) involving a "represent[ation] that goods or services have . . . characteristics . . . or qualities that they do not have . . ." (Complaint ¶ 64), based on various alleged misrepresentations about the condition of the property. (Complaint ¶ 61) As the complaint identified representations that fit within D.C.Code § 28–3904(a), appellants have stated a legally viable claim.

The complaint also claimed a violation of D.C.Code § 28–3904(d) involving a "represent[ation] that goods or services are of a particular standard, quality, grade, style, or model, if in fact they are of another." (Complaint ¶ 64) Considering the previously mentioned representations, which we assume to be true, and taking into account "the requirement that we construe and apply the CPPA 'liberally to promote its purpose,'" we must conclude

---

uses, benefits, or quantities that they do not have . . .

(d) represent that goods or services are of a particular standard, quality, grade, style, or model, if in fact they are of another;

(e) misrepresent as to a material fact which has a tendency to mislead;

(f) fail to state a material fact if such failure tends to mislead . . .

(h) advertise or offer goods or services without the intent to sell them or without the intent to sell them as advertised or offered. . . .

that the complaint stated a legally viable claim under D.C.Code § 28–3904(d). *Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1073 (D.C.2008) (quoting D.C.Code § 28–3901(c) (2001)).

■ Additionally, appellants' complaint alleged violations of D.C.Code § 28–3904(e) and (f) involving a "misrepresent[ation] as to a material fact which has a tendency to mislead" and the "fail[ure] to state a material fact if such failure tends to mislead." (Complaint ¶ 64) "We have said . . . that a person bringing suit under these sections need not allege or prove intentional misrepresentation or failure to disclose to prevail on a claimed violation. . . ." *Grayson*, 15 A.3d at 251 (internal quotation marks and citation omitted). In order to survive a motion to dismiss, appellants "must allege a material fact that tends to mislead." *Id.* Here, the complaint alleged, *inter alia*, that appellee "misrepresented that the basement and walls were free from defect, which misled [appellants] into thinking this Property was worth more than it actually was." (Complaint ¶ 60) Thus, the complaint stated a legally viable claim under D.C.Code § 28–3904(e) and (f).

The complaint's final allegation under the CPPA is that appellee violated D.C.Code § 28–3904(h) by "advertis[ing] goods or services . . . without the intent to sell them as advertised or offered." (Complaint ¶ 64) According to the complaint, appellee "actively advertised and marketed" the property and in the advertisements appellee misrepresented its condition "in an attempt to sell a subpar piece of Property." (Complaint ¶¶ 61, 63) In light of the allegations that appellee was actively involved in renovating the property and, as a professional developer, was aware of its defects, (Complaint ¶ 50) the complaint stated a legally viable claim under D.C.Code § 28–3904(h). In sum, all of appellants' claims under the CPPA survive appellee's motion to dismiss and are remanded to the trial court for further proceedings.

## C. Breach of Contract and Express Warranty

■ In the complaint, appellants claimed that appellee "fail[ed] to accept responsibility" for necessary repairs, in breach of the express limited warranty in the Purchase Agreement and Public Offering Statement. (Complaint ¶¶ 70, 77, 79) That limited warranty provided that "structural defects in the Property [would be repaired] within two years of conveyance." (Complaint ¶ 70, 77) According to appellants, the damages described in the complaint were structural defects within the meaning of the limited warranty, and thus appellee is in breach of the "Sales Contract and Public Offering Statement" and, specifically, of the express limited warranty. (Complaint ¶¶ 75, 78, 79)

The elements of a breach of express warranty, or contract, claim are: "(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C.2009) (citation omitted). Although the complaint alleged that appellants "signed an agreement" with appellee that includes a limited warranty to repair any structural defects in the property within two years of its purchase, (Complaint ¶ 77) the limited warranty referred to, according to the complaint, is contained in the Purchase Agreement and the Public Offering Statement. These documents, which were attached as Exhibits A and B to the complaint, do not involve appellee. The Purchase Agreement was signed by appellant Rushbrook on behalf of appellant Wetzel, as purchaser, and Bryant Street, LLC, as seller; the Public Offering Statement was

made by Bryant Street LLC as the Declarant of the Condominium.[5] At oral argument, appellants abandoned the argument they had made in the trial court that appellee was equally responsible, as the "alter-ego" of Bryant Street, LLC, under the Purchase Agreement and Public Offering Statement. With appellants' having abandoned that theory, their complaint against Capital City Real Estate—not a party to either document—does not make out a claim for breach of contract or express warranty. These claims were properly dismissed by the trial court.

### D. Strict Liability

 "This court has recognized the principles of strict liability in tort set forth in Restatement (Second) of Torts § 402A (1965)." *Word v. Potomac Elec. Power Co.,* 742 A.2d 452, 459 (D.C.1999) (citations omitted).

> To prevail on a claim for strict liability in tort under § 402A, the plaintiff must prove that: "(1) the seller was engaged in the business of selling the product that caused the harm; (2) the product was sold in a defective condition unreasonably dangerous to the consumer or user; (3) the product was one which the seller expected to and did reach the plaintiff consumer or user without any

substantial change from the condition in which it was sold; and (4) the defect was a direct and proximate cause of the plaintiffs injuries."

*Id.* at 459–60 (quoting *Warner Fruehauf Trailer Co. v. Boston,* 654 A.2d 1272, 1274 (D.C.1995)). Not only the seller, but any party that was an "integral part of the overall producing and marketing enterprise that placed the defective product into the stream of commerce" may be found strictly liable. *Berman v. Watergate West, Inc.,* 391 A.2d 1351, 1359 (D.C.1978). A defective product is one that is "not reasonably fit for its intended purpose or not of merchantable quality." *Bowler v. Stewart–Warner Corp.,* 563 A.2d 344, 346 (D.C. 1989) (emphasis omitted). Real estate is a "product" for strict liability purposes. *See Berman,* 391 A.2d at 1357 ("For it is by now widely accepted that the law of products liability applies ... to the sale of newly constructed homes."). We do not, at this preliminary stage, need to determine whether strict liability applies to a defective remodeled house. Nor does appellee make that argument.

Here, the complaint alleged that appellee, "an experienced developer with significant experience [in] buying, renovating, and selling renovated real estate," "know-

---

**5.** In their opposition to appellee's motion for judgment on the pleadings, appellants include, as an attachment, a copy of appellee's website, which includes a "1 year warranty on all of our work." They did not, however, move to amend the complaint to include this new alleged fact. *See* Super. Ct. Civ. R. 15(a) (prescribing that once a responsive pleading has been filed, a complaint may be amended by leave of court). In ruling on a Rule 12(b)(6) motion to dismiss, the court may consider only "documents incorporated into the complaint," such as the Purchase Agreement and the Public Offering Statement that were attached to appellants' complaint. *Washkoviak v. Student Loan Marketing Ass'n,* 900 A.2d 168, 178 (D.C.2006) (quoting *EEOC v. St. Francis Xavier Parochial Sch.,* 117 F.3d

621, 624 (D.C.Cir.1997)); *see also American Ins. Co. v. Smith,* 472 A.2d 872, 873 n. 3 (D.C.1984) ("Super.Ct.Civ. R. 12(b) is identical to its federal counterpart, Fed.R.Civ.P. 12(b)"). "When the trial court decides a Rule 12(b)(6) motion by considering factual material outside the complaint, the motion shall be treated as if filed pursuant to Rule 56, which permits the grant of summary judgment if there are no material facts in dispute and the movant is entitled to judgment as a matter of law." *Kitt v. Pathmakers, Inc.,* 672 A.2d 76, 79 (D.C.1996). Here, the trial court did not take the additional document attached to appellants' opposition into account, considered the motion solely on the pleadings, and dismissed the complaint without converting the motion to one for summary judgment.

ingly put a defective product into the stream of commerce by advertising and allowing the Property to be purchased" by appellants. (Complaint ¶¶ 82, 83) Additionally, the complaint alleged the condominium unit was defectively dangerous, (Complaint ¶ 82) which ultimately rendered a "substantial portion uninhabitable," (Complaint ¶ 86)—i.e., "not reasonably fit for its intended purpose." *Bowler*, 563 A.2d at 346. Finally, the complaint alleged that the defect was the direct and proximate cause of appellants' injuries which include a level of mold growth that resulted in "unacceptably hazardous air quality," resulting in loss of use and personal injury. (Complaint ¶¶ 55, 85, 86) Because appellants' complaint alleged facts, that, if proved, assert a claim for strict liability, the dismissal of this claim was erroneous.

For the foregoing reasons, we affirm in part and reverse and remand in part the trial court's judgment dismissing appellants' complaint.

*So ordered.*

**In re J.C.F. & H.A.Z.; J.A.C., Appellant.**